| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY** | |
| **Caption in Compliance with D.N.J. LBR 9004-1(b)** | |
| Marianna Udem | |
| Brigette McGrath | |
| Nicholas C. Brown | |
| ASK LLP | |
| 60 East 42nd Street, 46th Floor | |
| New York, NY 10165 | |
| Telephone: (212) 267-7342 | |
| Facsimile: (212) 918-3427 | |
| mudem@askllp.com | |
| bmcgrath@askllp.com | |
| nbrown@askllp.com | |
| *Special Counsel to the Plan Administrator* | |
| In re: | Chapter 11 |
| BED BATH & BEYOND, INC., *et al.*,[1] | Case No. 23-13359 (VFP) |
| Debtor. | (Jointly Administered) |
| Michael Goldberg, as Plan Administrator for 20230930-DK-Butterfly-1, Inc. (f/k/a/ Bed Bath & Beyond Inc.),[2] Plaintiff, | |
| v. | Adv. No. 24-01367 (VFP) |
| World Distribution Services LLC, Defendant. | |

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO DISMISS ALL COUNTERCLAIMS OF WORLD DISTRIBUTION SERVICES LLC PURSUANT TO FED. R. CIV. P. 12(B)(6)

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby. The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 650 Liberty Avenue, Union, New Jersey 07083.

[2] Pursuant to the *Certificate of Amendment of the Certificate of Incorporation of Bed Bath & Beyond Inc.*, which was filed with the State of New York Department of State on September 21, 2023, the name of the entity formerly known as "Bed Bath & Beyond Inc." was changed to *20230930-DK-Butterfly, Inc.* [Filing ID No. 230921001833 DOS ID 315602].

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ……………………..………….…………........……………3

NATURE OF THE PROCEEDING ............................................................................... 5

SUMMARY OF ARGUMENT ...................................................................................... 6

FACTUAL AND CASE BACKGROUND ................................................................... 7

STANDARD OF REVIEW …………………………………………………….………..11

ARGUMENT ...............................................................................................................12

A. The First Counterclaim (Breach of Contract) Should be Dismissed Because the Ordinary Course Statement Is Not Enforceable …………….…………………….........................12

B. The Second Counterclaim (Fraudulent Inducement) Should be Dismissed Because WDS Fails to Plausibly Allege Reasonable Reliance…………………………...……….…..……..……..14

C. The Third Counterclaim (Breach of Fiduciary Duty) Should Be Dismissed Because the Plan Administrator is Abiding By His Duties to the Estate and Creditors By Pursuing the Preference Claim ……………………………………………………………………...…………18

CONCLUSION .......................................................................................................... 21

# TABLE OF AUTHORITIES

**Cases**

*Allegheny Intern., Inc.*,
  158 B.R. 343 (Bankr. W.D. Pa. 1992) …………………………….…………………13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ………………………………………………………………... 11-12

*Bank of Utah v. Teterboro R.AM.S., LLC*,
  2014 WL 2434201 (D.N.J. May 29, 2014) …………………………….…………………..12

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) …………………………………...…………………………………11-12

*Chen v. HD Dimension, Corp.*,
  2010 WL 4721514 (D.N.J. Nov. 15, 2010) …………………………………………………..15

*Connelly v. Lane Const. Corp.*,
  809 F.3d 780 (3d Cir. 2016)…………………………………………….…………………..12

*Douglas v. Norwood*,
  132 F. Supp. 3d 834 (N.D. Miss. 2015) ……………………………………………………15

*In re Ames Dep't Stores, Inc.*,
  470 B.R. 280, 284 (S.D.N.Y.), *aff'd,* 506 F. App'x 70 (2d Cir. 2012) …….……………15

*In re Clean Burn Fuels, LLC*,
  No. 11-80562C-7D, 2014 WL 2987330 (Bankr. M.D.N.C. July 1, 2014) …...…………15

*In re GUE Liquidation Companies, Inc.*,
  642 B.R. 683 (Bankr. D. Del. 2022) …………………………………………………………18

*In re Iridium Operating LLC*,
  478 F.3d 452 (2d Cir. 2007) …………………………………...……………………12, 16

*In re Legarde*,
  654 B.R. 74 (Bankr. E.D. Pa. 2023) …………………………………………………………13

*In re Martin*,
  91 F.3d 389 (3d Cir. 1996) …………………………………….……………………...13

*In re Masters, Inc.*,
  141 B.R. 13 (Bankr. E.D.N.Y. 1992) …………………………………………………………16

*In re Roth American*,

975 F.2d 949 (3d Cir. 1992) ………………………………………………………14

*In re Stroud Ford, Inc.*,
205 B.R. 722 (Bankr. M.D. Pa. 1996) ………………………………..………..13, 14

*In re Vill. Red Rest. Corp.*,
No. 18-10960 (MEW), 2021 WL 3889793 (Bankr. S.D.N.Y. Aug. 31, 2021) …………19

*Martino v. First Nat'l Bank of Harvey (In re Garofalo's Finer Foods)*,
186 B.R. 414 (N.D. Ill. 1995) ………………………………...………………………15

*Mayer v. Belichick*,
605 F.3d 223 (3d Cir. 2010) ………………………………………………………12

*Phillips v. County of Allegheny*,
515 F.3d 224 (3d Cir. 2008) ………………………………………………………12

*SodexoMAGIC, LLC v. Drexel Univ.*,
24 F.4th 183 (3d Cir. 2022) ……………………………………………………..17

*State Capital Title & Abstract Co. v. Pappas Bus. Servs., LLC*,
646 F. Supp. 2d 668 (D.N.J. 2009) ……………………………………………...15

*Swift v. Pandey*,
2016 WL 4267947 (D.N.J. Aug. 10, 2016) ……………………………………..12

*Swift & Co. v. Hocking Valley Ry.*,
243 U.S. 281, 37 S.Ct. 287, 61 L.Ed. 722 (1917) ………………………………13

*United States v. Bond*,
762 F.3d 255 (2d Cir. 2014) ……………………………………………………..18

*Wilhelm v. Pray, Price, Williams & Russell*,
186 Cal. App. 3d 1324 (1986) ………..…………………………………………15

**STATUTES**
11 U.S.C. § 363 ………………………………………..…………….. *passim*
11 U.S.C. §§ 501 – 562 ………………………………………..……………………10
11 U.S.C. § 1123 …………………………………………………………………..18

**RULES**
Federal Rule of Civil Procedure 9 ………………………………………………15
Federal Rule of Civil Procedure 12 ............................................................ 11, 12, 22
Federal Rule of Bankruptcy Procedure 7012 ……………………………….…….. 11
Federal Rule of Bankruptcy Procedure 9019 ……………………….……………... *passim*

Michael Goldberg, as Plan Administrator (the "Movant" or "Plan Administrator") for 20230930-DK-Butterfly-1, Inc. (f/k/a/ Bed Bath & Beyond Inc.) and its affiliated debtors (each, a "Debtor" and collectively, the "Wind-Down Debtors" or "Debtors") in the above-captioned case, hereby files this Memorandum of Law in support of his *Motion to Dismiss All Counterclaims of World Distribution Services, LLC Pursuant to F.R.C.P. 12(b)(6)* (the "Motion to Dismiss"). In support hereof, Movant shows as follows:

## NATURE OF THE PROCEEDING

1.    The above-captioned adversary proceeding (the "Adversary Proceeding") was commenced on May 17, 2024 upon the Plan Administrator's filing of the *Complaint to Avoid and Recover Transfers Pursuant to 11 U.S.C. §§ 547, 548, 549, and 550 and to Disallow Claims Pursuant to 11 U.S.C. § 502* (the "Complaint"), asserting claims to avoid and recover certain transfers made to World Distribution Services LLC ("WDS" or "Defendant").[3]

2.    On November 6, 2025,  WDS filed its *Defendant World Distribution Services LLC's Answer, Affirmative Defenses, and Counterclaims to Complaint to Avoid and Recover Transfers Pursuant to 11 U.S.C. §§ 547, 548, 549, and 550 and to Disallow Claims Pursuant to 11 U.S.C. § 502* (the "Answer"), in which WDS asserts counterclaims against the Plan Administrator.[4]

3.    Through this Motion to Dismiss, the Plan Administrator requests dismissal of all counterclaims brought against Movant.

4.    The Court has jurisdiction to hear and determine this Motion to Dismiss.  Movant consents to this Court's ability to enter a final order in this matter.

---

[3]    Adv. Docket No. 1.

[4]    Adv. Docket No. 31.

## SUMMARY OF ARGUMENT

5.      This Adversary Proceeding is one of more than 250 proceedings brought by the Plan Administrator in the underlying bankruptcy cases to avoid and recover transfers during the 90-day preference period (the "Avoidance Actions") for the benefit of the estate and creditors, consistent with his prerogative under federal bankruptcy law and the plan of reorganization confirmed by this Court.  WDS takes special exception to the Plan Administrator's claims against it, arguing this Adversary Proceeding should never have been filed because WDS negotiated a purported preference claim waiver with the debtors-in-possession without ever notifying creditors or seeking this Court's approval.  This Court has already deemed the claim waiver to be unenforceable for these failures of notice and court approval, and therefore the Plan Administrator is not precluded from pursuing this Avoidance Action against WDS.  WDS now brings counterclaims against the Plan Administrator in an effort to essentially offset its avoidance liability.  But these counterclaims should not be entertained by the Court because they rely on the fatal premise that a creditor who ignores the fundamental bankruptcy principles of notice and court approval should be afforded the very relief it concealed from creditors and this Court.

6.      As set forth more fully herein, the Counterclaims cannot proceed as a matter of law because (i) there can be no claim for breach of a contract that is unenforceable for lack of notice and court approval, (ii) a party who is represented by counsel cannot demonstrate reasonable reliance on an opposing party's statement regarding a legal conclusion, and (iii) the Plan Administrator's pursuit of this Avoidance Action for the benefit of his constituents cannot give rise to a breach of fiduciary duty.

## **FACTUAL AND CASE BACKGROUND**[5]

i.   Debtors File Bankruptcy and Obtain DIP Financing

7.      On April 23, 2023 (the "Petition Date"), each Debtor, including Bed Bath &
Beyond Inc. ("BB&B" or the "Debtors"), filed a voluntary petition for relief under chapter 11
of the Bankruptcy Code (the "Chapter 11 Cases").[6]

8.      On April 24, 2023, the Court entered the *Interim Order (I) Authorizing the Debtors
to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and
Superpriority Administrative Expense Claims, (III) Granting Adequate Protection, (IV) Modifying
the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* (the "DIP
Order").[7]

9.      Under the DIP Order, the Debtors were authorized to and did in fact obtain post-
petition financing in exchange for granting a perfected post-petition security interest in and liens
on all DIP collateral including but not limited to cash and cash equivalents, proceeds of chapter 5
avoidance actions, and collateral securing prepetition secured obligations.[8]

10.     The DIP Order set forth the following regarding the Debtors' ability to use DIP
collateral:[9]

> 25. Disposition of DIP Collateral. Other than ordinary course inventory sales and
> other Dispositions subject to the Specified Liquidation Agreements (as defined in
> the DIP Credit Agreement) approved by order of the Bankruptcy Court or as
> otherwise provided for in the DIP Documents, **the Debtors shall not sell, transfer,
> lease, encumber or otherwise Dispose of any portion of the DIP Collateral the**

---

[5]   The following factual allegations are taken from the Complaint, the Answer and Counterclaims, or orders
      previously entered by this Court in this Adversary Proceeding or the underlying Bankruptcy Cases.  Factual
      allegations taken from the Counterclaims are assumed to be true solely for purposes of this Motion.

[6]   Complaint ¶ 7.

[7]   Case No. 23-13359, Docket No. 76

[8]   DIP Order at pp. 3-5, 32.

[9]   DIP Order at p. 58.

**fair market value of which exceeds $250,000, without the prior written consent of (x) the Required DIP Lenders, (y) the Required FILO Lenders (as defined in the Prepetition Credit Agreement) with respect to Prepetition FILO Priority Collateral and Postpetition FILO Priority Collateral, and (z) the Prepetition Administrative Agent** (acting at the direction of the Required Revolving Lenders (as defined in the AAL)) with respect to the Prepetition ABL Priority Collateral and Postpetition ABL Priority Collateral; no such consent shall be implied from any other action, inaction, or acquiescence by the Required DIP Lenders, the Required FILO Lenders, or the Prepetition Administrative Agent, or from any order of this Court.

(Emphasis added).

ii.    <u>WDS Agrees to Provide Post-Petition Services to Debtors</u>

11.    After the DIP Order was entered, on April 26, 2023, the Debtors and WDS commenced negotiations for WDS to provide post-petition services to the Debtors.  Among the participants in these negotiations, conducted by phone and e-mail, were Kirkland & Ellis LLP (counsel for the Debtors), Tucker Ellis LLP (counsel for WDS), and David Kasten (the Debtors' Executive VP and General Counsel).[10]

12.    Following negotiations, on May 3, 2023, WDS and the Debtors entered into an e-mail agreement for WDS to provide post-petition services (the "<u>Agreement</u>").[11]

13.    Under the Agreement, the Debtors agreed to and did in fact pay WDS $3,000,000 in the form of an upfront, lump sum payment (the "<u>Upfront Payment</u>") for WDS to provide post-petition services including storage, handling, and shipment.[12]

14.    Another provision in the Agreement stated that "Debtors agree and acknowledge that all pre-petition payments made by Debtors to WDS were made in payment of a debt incurred by the Debtors in the ordinary course of business of the Debtors and WDS and such payment was

---

[10]    Counterclaims at ¶¶ 4, 6.

[11]    Counterclaims at ¶ 7.

[12]    *Id.* at ¶¶ 7, 12.

made in the ordinary course of business of the debtor and WDS" (the "Ordinary Course Statement").[13]

15.    In addition, the Agreement provided that "WDS agrees to waive its prepetition claim."[14]

16.    The Ordinary Course Statement was a condition of WDS (along with the Upfront Payment) for agreeing to ship goods in its possession to the Debtors and to waive its prepetition claim.[15]

17.    No notice was provided to creditors or other interested parties regarding the Agreement, including the Ordinary Course Statement.

18.    Neither the Debtors nor WDS sought court approval, and the Court never reviewed or approved, the Agreement, including the Ordinary Course Statement.

iii.    Plan Confirmation and Appointment of Plan Administrator

19.    On September 14, 2023, the Court entered an order confirming the Debtors' chapter 11 plan of liquidation (the "Confirmed Plan").[16]

20.    On September 29, 2023, and in accordance with the Confirmed Plan and the corresponding Plan Administrator Agreement, the effective date of the Plan occurred and the Plan Administrator became the sole representative of the Wind-Down Debtors.[17]

21.    Pursuant to the Confirmed Plan, the Plan Administrator assumed responsibility for, *inter alia*, investigating, prosecuting, and compromising any and all of the Wind-Down Debtors'

---

[13]    Counterclaims at ¶ 8.

[14]    *Id.* at ¶¶ 7, 10.  WDS' prepetition claim waiver presumably did not include $301,688.96 in prepetition invoices which the Debtors paid on April 28, 2023.  *Id.* at ¶ 5.

[15]    *Id.* at ¶ 8.

[16]    Docket No. 2172.

[17]    Docket No. 2160, Art IV § F; Docket No. 2161, p. 8 (the "Plan Administrator Agreement").

causes of action including claims under chapter 5 of title 11 of the United States Code ("Chapter 5").

    iv.    The Adversary Proceeding and WDS' Motion for Summary Judgment

22.    Following his appointment, the Plan Administrator conducted a review of the Debtors' records and identified certain pre-petition payments made by the Debtors to WDS during the 90-day period preceding the Petition Date, or January 23, 2023 through April 23, 2023 (the "Preference Period").  On May 17, 2024, the Plan Administrator filed the Complaint to avoid and recover transfers received WDS during the Preference Period, in the sum of $2,911,466.79 (the "Preference Claim").

23.    On April 15, 2025, WDS filed a Motion for Partial Summary Judgment, as amended on April 29, 2025, seeking, *inter alia*, summary judgment in favor of WDS with regard to the Preference Claim, on the basis that the Ordinary Course Statement barred Plaintiff from pursuing the Preference Claim.[18]

24.    On September 24, 2025, the Court entered the *Order Denying, In Part, Defendant's Motion for (I) Summary Judgment on Complaint to Avoid and Recover Transfers Pursuant to 11 U.S.C. §§ 547, 548, 549, and 550 and to Disallow Claims Pursuant to 11 U.S.C. § 502; (II) For Sanctions Against Plaintiff for Failure to Perform Due Diligence; and (III) For Leave to File Counterclaim Against Plaintiff for Fraud as Successor in Interest Should the Court Not Find in Favor of Defendant* (the "Order on Summary Judgment"),[19] in which, *inter alia*, the Court denied WDS' motion for summary judgment as to the Preference Claim without prejudice to WDS' right to assert any counterclaims and affirmative defenses.  Among other things, the Court reasoned that

---

[18]    Adv. Docket No. 13.

[19]    Adv. Docket No. 30.

the Ordinary Course Statement, and the related statement that court approval was not required, are not legally enforceable because WDS and the debtors-in-possession failed to comply with notice, hearing, and court approval requirements under Fed. R. Bankr. P. 9019 and/or 11 U.S.C. § 363.[20]

> v.    WDS Files the Answer and Counterclaims

25.    On November 6, 2025, WDS filed the *Defendant World Distribution Services LLC's Answer, Affirmative Defenses, and Counterclaims to Complaint to Avoid and Recover Transfers Pursuant to 11 U.S.C. §§ 547, 548, 549, and 550 and to Disallow Claims Pursuant to 11 U.S.C. § 502* (the "Answer").[21]

26.    Through the Answer, WDS asserts counterclaims against the Plan Administrator for (i) breach of contract, (ii) fraudulent inducement, and (iii) breach of fiduciary duty (collectively, the "Counterclaims").

27.    By this Motion to Dismiss, the Plan Administrator timely seeks dismissal of the Counterclaims for failure to state a claim as a matter of law.

## STANDARD OF REVIEW

28.    In order to survive a Rule 12(b)(6) motion to dismiss, made applicable by Rule 7012 of the Federal Rules of Bankruptcy Procedure, a complaint must allege sufficient facts which, if accepted as true, "state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claimant must allege "more than labels or conclusions, [or] a formulaic recitation of the elements of a cause of action." *Id.* at 550.  In order to be facially plausible, the complaint must include "factual content that allows the court to draw the reasonable

---

[20]    *See Transcript of Continued Hearing on Motion for Summary Judgment Before the Honorable Vincent P. Papalia*, Adv. Docket No. 28, p. 22.

[21]    Adv. Docket No. 31.

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), citing *Twombly*, 550 U.S. at 556.

29.     In applying the *Twombly/Iqbal* pleading standard, courts undertake a three-step process: "first, the court must take note of the elements the plaintiff must plead to state a claim; second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the presumption of truth; finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Swift v. Pandey*, 2016 WL 4267947, at *1 (D.N.J. Aug. 10, 2016) (citing *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016)). Courts are "required to accept all well-pleaded allegations in the complaint as true and to draw all reasonable inferences in favor of the non-moving party." *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents" *Swift v. Pandey*, 2016 WL 4267947, at *2 (quoting *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010)).

30.     The pleading standard under *Twombly* and *Iqbal* applies to counterclaims. *See, e.g.,* *Bank of Utah v. Teterboro R.AM.S., LLC*, 2014 WL 2434201 (D.N.J. May 29, 2014) (dismissing counterclaims for failure to comply with *Iqbal* pleading standard); *Swift v. Pandey*, 2016 WL 4267947 (same).

## ARGUMENT

### A. The First Counterclaim (Breach of Contract) Should be Dismissed Because the Ordinary Course Statement Is Not Enforceable

31.     WDS cannot succeed on a breach of contract counterclaim because the Ordinary Course Statement is not enforceable as a matter of law. WDS alleges that the Ordinary Course

Statement constitutes a complete affirmative defense to the Preference Claim, to which the Plan Administrator is bound.  However, federal bankruptcy law dictates that an agreement to dispose of an estate cause of action requires notice and court approval.  *See* Fed. R. Bankr. P. 9019; 11 U.S.C. § 363; *see also In re Iridium Operating LLC*, 478 F.3d 452, 455 (2d Cir. 2007) ("Before pre-plan settlements can take effect, however, they must be approved by the bankruptcy court pursuant to Bankruptcy Rule 9019."); *In re Legarde*, 654 B.R. 74, 84 (Bankr. E.D. Pa. 2023) ("all compromises are subject to court approval under Bankruptcy Rule 9019(a)"); *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996) (in the context of Section 363 approvals noting that a trustee may not act unilaterally or avoid "complete disclosure and review by the creditors of the estate and by the bankruptcy court."); *Allegheny Intern., Inc.*, 158 B.R. 343, 353 (Bankr. W.D. Pa. 1992); *In re Stroud Ford, Inc.*, 205 B.R. 722, 727 (Bankr. M.D. Pa. 1996) ("When a debtor-in-possession contracts, it binds not only itself but it obligates the entire estate for the ramifications of its decisions.  Fairness dictates that such an obligation should only be effective after notice and a hearing, if necessary."); *Swift & Co. v. Hocking Valley Ry.*, 243 U.S. 281, 289-90, 37 S.Ct. 287, 61 L.Ed. 722 (1917) ("if a stipulation is to be treated as an agreement concerning the legal effect of admitted facts, it is obviously inoperative; since the court cannot be controlled by agreement of counsel on a subsidiary question of law.")

*32.*     This Court recently determined in this Adversary Proceeding that the Ordinary Course Statement does not operate to bar Plaintiff from pursuing the Preference Claim.  In denying WDS' motion for summary judgment, the Court reasoned that enforceability of the Ordinary

Course Statement was contingent upon notice to creditors and court approval, which were never attempted in this case.[22]

33.    In so holding, the Court relied in part on the Third Circuit opinion, *In re Roth American*, 975 F.2d 949 (3d Cir. 1992).  Like the Debtors and WDS, the parties in *Roth American* entered into a post-petition agreement that one party failed to carry out, resulting in the other party pursuing a claim for breach of contract.  The *Roth American* court examined the agreement and determined that notice and court approval was a condition to the agreement's enforceability under 11 U.S.C. § 363.  Because neither notice or court approval occurred, the Third Circuit concluded that the agreement was unenforceable.  *See also In re Stroud Ford, Inc.*, 205 B.R. 722, 727 (Bankr. M.D. Pa. 1996) ("When a debtor-in-possession contracts, it binds not only itself but it obligated the entire estate for the ramifications of its decisions.  Fairness dictates that such an obligation should only be effective after notice and a hearing, if necessary.")  The Third Circuit further ruled that a party was not entitled to a claim for breach of an unenforceable agreement.

34.    Here, the Agreement was intended by WDS to dispose of an estate cause of action.  However, no notice or court approval was obtained here as required under 11 U.S.C. § 363 and Fed. R. Bankr. P. 9019.  Absent notice and court approval, there can be no cause of action for a subsequent breach.  In accordance with the *Roth American* holding, WDS' claim for breach of contract must fail and the First Counterclaim should be dismissed.

**B.  The Second Counterclaim (Fraudulent Inducement) Should be Dismissed Because WDS Fails to Plausibly Allege Reasonable Reliance**

35.    The Second Counterclaim asserts a claim for fraudulent inducement.  Under New Jersey law, a claim for fraudulent inducement requires "a misrepresentation of material fact;

---

[22]    *See Transcript of Continued Hearing on Motion for Summary Judgment Before the Honorable Vincent P. Papalia*, Adv. Docket No. 28, p. 22.

knowledge or belief by the defendant of its falsity; intent that the other party rely on the misrepresentation; and reasonable reliance thereon by the other party." *Chen v. HD Dimension, Corp.*, 2010 WL 4721514, at *5 (D.N.J. Nov. 15, 2010) (citing *State Capital Title & Abstract Co. v. Pappas Bus. Servs., LLC*, 646 F. Supp. 2d 668, 681 (D.N.J. 2009)).  Allegations of fraud must be pled with particularity.  Fed. R. Civ. P. 9(b).  Putting aside the other elements of a fraudulent inducement claim, WDS' inability to demonstrate reasonable reliance is fatal to its claim.

      i.    <u>WDS Cannot Reasonably Rely on Another Party's Legal Conclusion</u>

36.    A statement regarding a conclusion of law cannot support a claim for reasonable reliance, especially where the party is represented by competent counsel.  *See, e.g., Wilhelm v. Pray, Price, Williams & Russell*, 186 Cal. App. 3d 1324, 1332 (1986) (holding that decision to dismiss an action based on representations of opposing counsel could not, as a matter of law, show reasonable reliance to support a fraud claim); *Douglas v. Norwood*, 132 F. Supp. 3d 834 (N.D. Miss. 2015) (reliance on representation by opposing counsel that statute of limitations had not run, rather than confirming the truth for himself, was not reasonable under an equitable estoppel analysis).

37.    Application of the ordinary course of business defense to avoidable transfers under the Bankruptcy Code necessarily involves a question of law.  *See, e.g., Martino v. First Nat'l Bank of Harvey (In re Garofalo's Finer Foods)*, 186 B.R. 414, 421 (N.D. Ill. 1995) (whether transfers were made in the ordinary course of business is a question of law); *In re Clean Burn Fuels, LLC*, No. 11-80562C-7D, 2014 WL 2987330, at *9 (Bankr. M.D.N.C. July 1, 2014); *In re Ames Dep't Stores, Inc.*, 470 B.R. 280, 284 (S.D.N.Y.), *aff'd*, 506 F. App'x 70 (2d Cir. 2012) (interpretation of the ordinary course defense involves a mixed question of law and fact).  Therefore, a statement that transfers were made in the ordinary course of business constitutes a legal conclusion which

only the court can determine.  It follows that WDS cannot *reasonably rely* upon an opposing

party's statement that an ordinary course of business defense shields its pre-petition payments from

avoidance.

38.     Similarly, representations that a bankruptcy statute and bankruptcy rule do not

apply cannot sustain a claim for reasonable reliance against the Plan Administrator.  WDS relied

on its own sophisticated bankruptcy counsel to negotiate the Agreement.[23]  WDS, by and through

its counsel, knew or should have known that a debtor-in-possession's agreement to waive a

valuable estate cause of action requires notice and court approval in accordance with Fed. R.

Bankr. P. 9019 (requiring notice and court approval for all compromises) and 11 U.S.C. §

363(b)(1) (requiring notice and a hearing for the use or sale of property of the estate).  The

Bankruptcy Code's notice requirements have a "clear purpose to prevent concealed agreements

which are unknown to the creditors and unevaluated by the court." *In re Iridium Operating LLC*,

478 F.3d at 461-62 (quoting *In re Masters, Inc.*, 141 B.R. 13, 16 (Bankr. E.D.N.Y. 1992)).

Represented by its own seasoned bankruptcy counsel who was actively involved in drafting the

Agreement, any reliance on the part of WDS regarding a statement that notice and court approval

were not necessary does not yield a claim for *reasonable* reliance against the debtors (or the Plan

Administrator).

39.     Because the Ordinary Course Statement constitutes a legal conclusion regarding

the application of a statutory defense to an estate cause of action, and based on the fundamental

bankruptcy requirements of notice and court approval, any reliance on the part of WDS was not

reasonable and cannot as a matter of law serve as the foundation for a claim for fraudulent

---

[23]     As set forth in the e-mail communications accompanying the Counterclaims, the attorneys who negotiated the
Ordinary Course Statement for WDS are the same attorneys who are pursuing the Counterclaims on behalf of
WDS.

inducement against the Plan Administrator.  Therefore, the Second Counterclaim should be dismissed.

    ii.    <u>WDS Fails to Demonstrate a Belief That the Ordinary Course Statement Is True</u>

    40.    WDS cannot have relied on the Ordinary Course Statement because it knew or should have known the statement was false.  A party has no cause of action for breach of statements it knew to be false.  *See, e.g., SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 207 (3d Cir. 2022) (noting that one "is not justified in relying upon the truth of an allegedly fraudulent misrepresentation if [they] know[] it to be false or its falsity is obvious.") (quotation and citation omitted).

    41.    Nowhere in the Answer and Counterclaims does WDS allege that it believed all pre-petition transfers were made in the ordinary course of business.  Rather, the allegations imply that WDS believed the opposite to be true.  For example, WDS alleges that the Ordinary Course Statement was "a material provision of the Agreement" and "a condition to WDS agreeing to (i) ship the Goods to the Debtors and (ii) waive its prepetition claim."[24]  WDS also alleges that it would not have entered into the Agreement "in the absence of the Debtors' agreement to make the Ordinary Course Admission".[25]  At the very least, the allegations demonstrate that WDS believed there to be enough uncertainty regarding the application of the ordinary course of business defense that securing an "admission" from the debtors in this regard was an essential component of the Agreement.

    42.    In short, WDS knew that the Ordinary Course Statement was nothing less than a legal conclusion, the determination of which resides with the Court.  Thus, WDS could not have

---

[24]    Counterclaims at ¶ 8.

[25]    Counterclaims at ¶ 9.

reasonably relied on a statement by a non-judicial entity (the Debtors) regarding the application of the ordinary course of business defense.

      iii.    <u>The Plan Administrator Cannot Be Liable for Misrepresentations Made By the Debtors-in-Possession</u>

    43.    Finally, any fraudulent inducement claim WDS may otherwise be entitled to pursue cannot lie against the Plan Administrator, who is separate and distinct from the debtors-in-possession.  The Plan Administrator is a creature of the Plan; he was not involved in pre-confirmation activities of the debtors-in-possession including the initial weeks of the Chapter 11 Cases when WDS negotiated the Agreement.  The Plan Administrator is a representative of the estate under Section 1123(b)(3)(B) of the Bankruptcy Code, and is a separate and independent body from the Debtors. *See, e.g., United States v. Bond,* 762 F.3d 255, 257, 260 (2d Cir. 2014) (noting that a "representative of the estate" under 11 U.S.C. § 1123(b)(3)(B) is legally distinct from a debtor or a trustee under the Code); *In re GUE Liquidation Companies, Inc*., 642 B.R. 683, 686 (Bankr. D. Del. 2022) (applying *Bond*).

    44.    Article VII(D) of the Confirmed Plan further states:

> For the avoidance of doubt, notwithstanding anything to the contrary contained herein, the Plan Administrator in its capacity as such, shall have no liability whatsoever to any party for the liabilities and/or obligations, however created, whether direct or indirect, in tort, contract, or otherwise, of the Debtors.

Confirmed Plan, Art. VII(D).

    45.    Therefore, any claim for fraudulent inducement based on misrepresentations made by the debtors-in-possession cannot result in liability on the part of the Plan Administrator.

**C.  The Third Counterclaim (Breach of Fiduciary Duty) Should Be Dismissed Because the Plan Administrator is Abiding By His Duties to the Estate and Creditors By Pursuing the Preference Claim**

46.    The Plan Administrator is a fiduciary to the estate.  As such, the Plan Administrator owes duties to the entire creditor body. In a situation where parties have made "admissions" without notifying creditors, a subsequent plan administrator is not required to take them at face value. For example, in one recent case, a Plan Administrator sought to avoid payments made to a company owned by a principal of the debtor. The principal argued that the Plan Administrator was estopped from pursuing the claims based on stipulations made between the debtor and the related creditor, including in the debtor's schedules and other agreements. The court rejected this argument, stating:

> The Plan Administrator represents the interests of all creditors, and in performing his duties he is not bound or estopped by self-serving "admissions" made by Ms. Serafis as to amounts that Village Red allegedly owed to another one of Ms. Serafis's wholly-owned companies.

*In re Vill. Red Rest. Corp.*, No. 18-10960 (MEW), 2021 WL 3889793, at *20 (Bankr. S.D.N.Y. Aug. 31, 2021). The same is true here. The Plan Administrator is a fiduciary of *all* creditors, not just WDS. To allow WDS to receive the benefit of a claim waiver that was not permitted under the DIP Order and for which no notice to creditors or court approval was attempted, would be unjust to the *entire* creditor body.  This is especially the case in light of the Court's recent determination that the Ordinary Course Statement does not preclude the Plan Administrator from pursuing the Preference Claim.

47.    The duty of the Plan Administrator to pursue the Preference Claim for the benefit of all creditors is further borne out in the Confirmed Plan and Plan Administrator Agreement.  The Confirmed Plan describes the duties of the Plan Administrator to include the following:

> Subject to the terms of the Plan, among other duties normal and customary of a director and officer responsible for winding down the affairs of a business, **the Plan Administrator shall have the right and duty to investigate, prosecute, and compromise any and all of the Debtors' and Wind Down Debtors' Claims and Causes of Action**.

Confirmed Plan, Article IV(F)(4), Confirmation Order ¶ 94.

48.    Similarly, the Plan Administrator Agreement bestows upon the Plan Administrator

the following duties, among others:

> The Plan Administrator . . . shall retain and have all the rights, powers, and duties of a
> trustee in bankruptcy . . . including . . . to investigate, commence, prosecute and settle
> all Causes of Action belonging to the Wind-Down Debtors

Plan Administrator Agreement, Article II(2.1)(q).

49.    Under any lens, the pursuit of Causes of Action such as the Preference Claim is

consistent with the Plan Administrator's function as a fiduciary to the estate.  WDS simply

misinterprets the role of the Plan Administrator when it alleges the Plan Administrator is not acting

in its interest by failing to dismiss causes of action against it, especially following the Court's

determination that the Ordinary Course Statement does not rebut the Preference Claim.  The

interests of the creditor body are served by prosecuting the Preference Claim.  This is the case even

if the result is that one creditor must return property for the benefit of all creditors.

50.    WDS' allegation that the Plan Administrator and his counsel have personal

pecuniary interests that prevent them from exercising their responsibilities to creditors is absurd.

That a plan administrator or trustee stands to be compensated for pursuing estate causes of action

is hardly extraordinary.  Indeed, it would be an unusual case where an estate representative is not

compensated for pursuing chapter 5 causes of action.  Moreover, WDS' implication that plaintiff

is somehow acting in bad faith is belied by the nature of the compensation structure.  Contingency

fee structures are commonplace and often preferable in bankruptcy litigation, which typically

features estates with limited resources that would otherwise lack the means or risk tolerance to

retain counsel on an hourly fee basis.  This structure also operates as a deterrent to the pursuit of

baseless claims or causes of action that have a low likelihood of success.  As WDS points out, both

the Plan Administrator and his counsel will only receive compensation in the event he is successful in the Adversary Proceeding, which has thus far been ongoing for 1 ½ years.[26]

51.     Under these facts, a claim for breach of fiduciary duty cannot lie and the Third Counterclaim should be dismissed.

## CONCLUSION

52.     Each of the WDS Counterclaims is subject to dismissal under Rule 12(b)(6) because WDS cannot shown entitlement to relief as a matter of law.  The First Counterclaim for breach of contract must fail because the underlying contractual provision is unenforceable as a matter of law.  The Second Counterclaim for fraudulent inducement fails because WDS cannot demonstrate reasonable reliance with respect to statements regarding the application of bankruptcy law, and because WDS was represented at all times by sophisticated bankruptcy counsel.  The Third Counterclaim for breach of fiduciary duty also fails, because prosecution of the Preference Claim is directly in line with the Plan Administrator's duties to creditors.

53.     For the reasons cited herein, Movant respectfully submits that all Counterclaims against Movant be dismissed with prejudice.

---

[26]    Counterclaims at ¶¶ 34-35 (alleging that the Plan Administrator and his counsel are compensated based solely on the amount of money recovered, rather than on an hourly basis).

November 26, 2025                    **ASK LLP**

By:  /s/ *Brigette McGrath*
Brigette McGrath, Esq., NJ SBN 01000-2011
Nicholas C. Brown, Esq., VA SBN 99898
(admitted *pro hac vice*)
2600 Eagan Woods Drive, Suite 400
St. Paul, MN  55121
Telephone: (877) 746-4275
Fax: (651) 406-9676
Email: bmgrath@askllp.com
            nbrown@askllp.com

*-and-*

Edward E. Neiger, Esq.
ASK LLP
60 East 42nd Street, 46th Fl.
New York, New York  10165
Telephone: (212) 267-7342
Fax: (212) 918-3427

*Counsel for the Plan Administrator*