Maha M. Kabbash, Esq. (MK-0163)
TUCKER ELLIS LLP
1776 On the Green
67 E. Park Place, Ste. 500
Morristown, NJ 07960
Telephone: (862) 261-2532

Brian J. Jackiw (admitted *pro hac vice*)
Thomas R. Fawkes (admitted *pro hac vice*)
TUCKER ELLIS LLP
233 South Wacker Drive
Suite 6950
Chicago, Illinois 60606-9997
Telephone: (312) 624-6300

*Counsel to Defendant and Counter-Plaintiff World Distribution Services LLC*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| In re:<br><br>**BED BATH & BEYOND, INC.,** *et al.*<br><br>　　　*Debtors*.<br>————————————————<br>**Michael Goldberg, as Plan Administrator for 20230930-DK-Butterfly-1, Inc. (f/k/a Bed Bath & Beyond,**<br><br>　　　*Plaintiff and Counter-Defendant*,<br><br>v.<br><br>**World Distribution Services LLC**<br><br>　　　*Defendant and Counter-Plaintiff.* | **Case No. 23-13359 (VFP)**<br><br>**(Jointly Administered)**<br><br>**Chapter 11**<br><br><br>**Adv. Case No. 24-01367** |

## DEFENDANT AND COUNTER-PLAINTIFF WORLD DISTRIBUTION SERVICES LLC'S OPPOSITION TO PLAINTIFF AND COUNTER-DEFENDANT'S MOTION TO DISMISS COUNTERCLAIMS PURSUANT TO FED. R. CIV. P. 12(B)(6)

# <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ........................................................................................... 1

BACKGROUND ............................................................................................................... 2

LEGAL STANDARDS ....................................................................................................... 5

ARGUMENT ................................................................................................................... 6

    I.    WDS Has Plausibly Alleged a Counterclaim for Breach of the
        Agreement.................................................................................................. 6

    II.    WDS Plausibly Asserts a Counterclaim for Fraudulent
        Inducement............................................................................................... 8

        1.    The Fact That WDS Was Represented by Counsel is Not
                Fatal to its Reasonable Reliance Argument. ....................................... 8

        2.    WDS Has No Obligation to Demonstrate the Ordinary
                Course Admission to be True, Certainly Not at the
                Pleadings Stage. ............................................................................... 14

        3.    The Plan Administrator is the Successor of the Debtors. ................. 15

        4.    Despite the Plan Administrator's Protestations, He Can be
                Held Liable for His Conduct. ............................................................ 16

    III.    A Plausible Claim for Breach of Fiduciary Duty Has Been Pled. ................. 17

CONCLUSION............................................................................................................... 20

## **TABLE OF AUTHORITIES**

**Cases**

*Aatrix I,* 882 F.3d 1121 (Fed Cir.  2018) .................................................................. 10

*AES Corp. v. Dow Chem Co.*, 325 F.3d 174 (3d Cir. 2003) ........................................ 13

*Ashcroft v. Iqbal,* 129 S.Ct. 1937, 173 L. Ed. 2d 868 (2009) ...................................... 9

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ................ 9

*Conley v. Gibson,* 355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957) ............................. 9

*Douglas v. Norwood*, 132 F.Supp. 3d 834 (N.D. Miss. 2015) ...................................... 13

*Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.*, 343 F.3d 189 (2d Cir. 2003) ....... 13

*Harris v. Steelweld Equipment Co., Inc.,* 869 F.2d 396 *(8th Cir. 1989)* ...................... 17

*In re Keene Corp.*, 205 B.R. 690 (Bankr. S.D.N.Y. 1997) .......................................... 23

*In re McLean Wine Co.*, 463 B.R. 838 (Bankr. E.D. Mich. 2011) ................................. 23

*In re Petersburg Regency LLC,* 540 B.R. 508 (Bankr. D.N.J. 2015) ........................... 11

*In re Price,* 361 B.R. 68, (Bankr. D.N.J. 2007) .............................................. 11

*Lyon Fin. Servs. v. Ill. Paper & Copier Co.*, 732 F.3d 755 (7th Cir. 2013) .................. 14

*Matter of Taxman Clothing Co.*, 49 F.3d 310 (7th Cir. 1995) .................................. 23

*Miller v. Yokohama Tire Corp.*, 358 F.3d 616 (9th Cir. 2004) .............................. 14, 15

*Namerow v. PediatriCare Assocs., LLC*, 461 N.J. Super. 133, (Ch. Div. 2018) ................. 22

*Phillips v. Cnty. of Allegheny,* 515 F.3d 224 (3d Cir. 2008) ................................... 9

*United States ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739, 143 S. Ct. 1391, 216 L. Ed. 2d 1 (2023) ...... 14

*United States v. D.K.G. Appaloosas, Inc.*, 630 F. Supp. 1540 (E.D. Tex. 1986) .................. 16

*United States v. McKeon*, 738 F.2d 26 (2d Cir. 1984) .................................................................. 17

*Wilhelm v. Pray, Price, Williams & Russel*, 186 Cal. App. 3d 1324 (1986) ............................... 13

*Williams v. Union Carbide Corp,* 790 F.2d 552 (6th Cir. 1986) ................................................. 17

**Statutes**

11 U.S.C § 1123(b)(3)(B) .......................................................................................................... 19

11 U.S.C. § 505(a) ..................................................................................................................... 19

**Rules**

Fed. R. Bankr. P. 7008 ................................................................................................................. 9

Fed. R. Bankr. P. 7012(b) ............................................................................................................ 9

Fed. R. Bankr. P. 9019 ............................................................................................................... 10

Fed. R. Civ. P. 12(b)(6) ............................................................................................................... 9

Fed. R. Civ. P. 8(a) ...................................................................................................................... 9

Fed. R. Evid. 801(d)(2)(D) .................................................................................................... 16, 17

Defendant and Counter-Plaintiff World Distribution Services LLC ("Defendant" or "WDS"), by and through its undersigned counsel, hereby files this Opposition to the Motion to Dismiss all Counterclaims (the "Motion to Dismiss") filed by Michael Goldberg, as Plan Administrator (the "Plaintiff" or "Plan Administrator") for 20230930-DK-Butterfly-1, Inc. (f/k/a Bed Bath & Beyond Inc.) and its affiliated debtors (each a "Debtor" and collectively the "Debtors").  In support thereof, Defendant states as follows:

## PRELIMINARY STATEMENT

WDS's Counterclaims (Docket No. 31) are the result of the Plan Administrator engaging in conduct that violates a valid, enforceable contract entered into between the Debtors and WDS during the pendency of the Debtors' chapter 11 cases that delivered substantial benefit to the estates and creditors.  As much as the Plan Administrator would like to separate himself, and his conduct, from prior actions taken by the Debtors that impact his ability to pursue avoidance action claims against WDS, he cannot.  He is the sole representative of the estates and therefore is bound by the Debtors' actions.

In hearings before this Court on WDS's motion for summary judgment on the Plan Administrator's adversary complaint, which was granted in part and denied in part, the Court expressed its concerns with the Plan Administrator's actions, stating expressly that such actions may constitute a repudiation and breach of the Debtors' and WDS's post-petition agreement. Moreover, the Court acknowledged that based on the record before it at the time of the Motion for Summary Judgment, he could not rule on the disputed issues giving rise to such claims, noting the necessity of further discovery.  On this basis, the Court granted leave to WDS to assert claims related to the Plan Administrator's conduct, and WDS has done exactly that by the Counterclaims, which assert claims for breach of contract, fraudulent inducement, and breach of fiduciary duty

1

against the Plan Administrator.  Each of these Counterclaims are well-pleaded and easily satisfy the prevailing standards under Fed. R. Civ. P. 8 and 9, made applicable to this adversary proceeding by Fed. R. Bankr. P. 7008 and 7009.

Indeed, WDS has pleaded sufficient facts to state claims on all counter-claims included in its Answer, Affirmative Defenses, and Counterclaims [Docket No. 31].  The Motion to Dismiss should be denied.

## **BACKGROUND**

This Court is well aware of the history of this case, as it has been briefed extensively in connection with WDS's Motion for Summary Judgment.  Briefly, however, the material facts relevant to the Counterclaims are as follows:[1]

Prior to and following the Petition Date, WDS provided logistics and warehousing services to the Debtors.  Counterclaims, ¶ 3. As of the Petition Date, WDS was in possession of more than $20 million of goods destined for the Debtors in its possession and also had a $2 million claim for unpaid services rendered.  For obvious reasons, the Debtors wanted to obtain the warehoused goods.  The Debtors notified WDS that it would be treated as a critical lien claimant subject to the Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Pay Certain Prepetition Secured Claims of Critical Lien Claimants, (II) Confirming Administrative Expense Priority of Critical Outstanding Orders, and (III) Granting Related Relief (Case No. 23-13359, Docket No. 22, the "Critical Lien Motion") and orders entered as to the same, represented that all pre-Petition Date payables would be paid, and requested that WDS "resume operations

---

[1] A fuller recitation of the facts relevant to the Counterclaims can be found in WDS's Memorandum of Law in Support of its Motion for Summary Judgment [Docket No. 12] and its Counterclaims [Docket No. 31], which are incorporated herein by reference.

immediately."

As is custom in such matters, WDS, through its bankruptcy counsel, engaged in negotiations with the Debtors and their bankruptcy counsel concerning the delivery of the warehoused goods, payment for pre- and post-Petition Date services, and related matters. These negotiations culminated in an e-mail agreement dated May 3, 2023 (the "Agreement") which contains the Ordinary Course Acknowledgment that is the subject of the motion practice in this action and primary factual basis for the Counterclaims. There is no dispute that WDS honored all of its obligations under the Agreement.

The Ordinary Course Acknowledgement notwithstanding, on May 17, 2024, the Plan Administrator commenced this adversary proceeding, asserting several claims against WDS, including: Count I, a claim for avoidance of preferential transfers in the amount of 3,213,155.75; Count II, a claim for avoidance of fraudulent transfers in the amount of $3,213,155.75; and Count III, a claim for avoidance of unauthorized post-petition transfers in the amount of $3,213,155.75.[2]

On April 15, 2025, WDS filed its Motion for Summary Judgment (Docket No. 12, the "MSJ"), seeking summary judgment in its favor on all counts of the Plan Administrator's complaint. After extensive briefing (including supplemental briefing on the issue of whether the Plan Administrator's prosecution of this case constitutes a breach or repudiation of the Agreement), the Court entered two orders on the MSJ: first, an order dated July 18, 2025, in which the Court granted summary judgment in WDS's favor on Counts II and III of the complaint, with prejudice (Docket No. 23), and second, an order dated September 24, 2025, in which the Court denied the MSJ as to Count I of the complaint, without prejudice to WDS's right to assert

---

[2] The Plan Administrator did not delineate his demand amount between each count, despite having the information readily available.

counterclaims and affirmative defenses (Docket No. 30).

Thereafter, on November 6, 2025, WDS filed its Answer, Affirmative Defenses, and Counterclaims to the Plan Administrator's Complaint (Docket No. 31). Therein, WDS asserted three different Counterclaims against the Plan Administrator: Counterclaim I, for breach of the Agreement; Counterclaim II, for fraudulent inducement; and Counterclaim III, for breach of fiduciary duty.

By its Motion to Dismiss, the Plan Administrator asks this Court to dismiss each of the Counterclaims, albeit under entirely faulty premises:

First, the Plan Administrator asserts that Counterclaim I, for breach of the Agreement, should be dismissed because "[t]his Court has already deemed the claim waiver to be unenforceable for" failure to obtain Court approval. *This is entirely false*. The Court expressly held open the issue of whether the Debtors could have entered into the Agreement without Court approval, and therefore, dismissing Counterclaim I on the pleadings is not appropriate. And even if this Court ultimately does conclude that the Agreement cannot be enforced by WDS for the Debtors' failure to obtain Court approval, WDS still can assert that the Plan Administrator should be equitably estopped from asserting such conclusion against it. The Court expressly noted at the hearings on the MSJ that WDS's equitable estoppel theory had validity, and deserves to be litigated.

As for Counterclaim II, the Plan Administrator asserts that it must fail because WDS, who was represented by counsel at the time the Agreement was negotiated and entered into, is not allowed to rely on the Debtors' legal conclusion concerning their ability to enter into the Agreement without Court approval. Moreover, the Plan Administrator asserts that he cannot be liable for misrepresentations made by the Debtors. Both propositions are untrue.

4

And as for Counterclaim III, the Plan Administrator's argument in support of dismissal is as circular as his other arguments. In the Plan Administrator's view, because he is a fiduciary of "all" creditors, his prosecution of an avoidance action against a single creditor (WDS), is inherently consistent with the exercise of his duties. But this simplistic argument completely misses the mark. Prosecution of a meritless avoidance action not only breaches his duty to WDS, but to all creditors, because such prosecution represents a waste of estate resources that could be devoted to actual value-maximizing activities. This is especially the case where, as here, there is no possible scenario in which the Plan Administrator will realize a recovery against WDS in this action.

## LEGAL STANDARDS

Rule 12(b)(6) of the Federal Rules of Civil Procedure applies to adversary proceedings in Bankruptcy Court pursuant to Rule 7012(b) of the Federal Rules of Bankruptcy Procedure. *See* Fed. R. Bankr. P. 7012(b).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (referring to a Rule 12(b)(6) Motion to Dismiss). Rule 8(a) of the Federal Rules of Civil Procedure (the "*Federal Rules*")*,* made applicable to this action by Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*")*,* requires only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). While a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

5

will not do . . . [.]" *Twombly,* 550 U.S. 544 at 555 (citation omitted). Rule 8(a)(2) thus requires "some factual allegation in the complaint" that provides "not only 'fair notice,' but also the 'grounds' on which the claim rests." *Phillips v. Cnty. of Allegheny,* 515 F.3d 224, 232 (3d Cir. 2008) (citing *Twombly,* 550 U.S. at 556); *see also Conley v. Gibson,* 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957) ("The statement must provide 'the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'"). On a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the nonmoving party. *Iqbal,* 556 U.S. at 678. Dismissal at this early stage is disfavored where "factual allegations [in the Complaint], taken as true, prevent resolving the eligibility question as a matter of law."*Aatrix I,* 882 F.3d 1121, 1125 (Fed Cir. 2018).

## ARGUMENT

Under the plausibility standard governing complaints filed in federal court, WDS has more than sufficiently pleaded facts that would support entitlement to relief when taken as true. As for each Counterclaim, WDS submits that dismissal is not appropriate or warranted for the following reasons:

## I.    WDS Has Plausibly Alleged a Counterclaim for Breach of the Agreement.

Plaintiff's main argument with respect to Counterclaim I is that it should be dismissed because Bankruptcy Rule 9019 required the Ordinary Course Acknowledgement to be approved by the Court, with notice to all creditors. In fact, the Plan Administrator went so far as to say that the Court *already ruled on this issue* at the MSJ stage. This is completely disingenuous. While this Court expressed concerns at the August 12, 2025 hearing on the MSJ as to the entry into the Agreement without Court approval, the Court's ruling was expressly limited to the MSJ itself. *See* Transcript of August 12, 2025 Hearing (Docket No. 28, "August 12 Transcript"), pg. 19:19-24

("I'm deciding for the purposes of this summary judgment motion that this appears to me to be a transaction that required Court approval.  But I'm not precluding you from showing through Bed Bath & Beyond or Kirkland & Ellis or whomever that they didn't think the transaction needed approval for X, Y, Z reasons.").   Further, the Court acknowledged that this was an issue that required further discovery, and therefore, not one that is subject to disposition at the pleading stage. August 12 Transcript, pg. 21:11-15 ("I'm denying summary judgment on this count without prejudice to further discovery and defenses along the lines I discussed, including that Court approval was not needed, that the approval would have been obtained anyway, that equitable estoppel, whatever it is, it's all without prejudice.").

In prior briefing before this Court, WDS also raised an argument that even if the Ordinary Course Acknowledgement cannot be enforced due to the Debtors' decision not to seek Court approval of it, the Plan Administrator should be equitably estopped from taking a position in contravention of the Ordinary Course Acknowledgement.  *See, e.g., In re Price,* 361 B.R. 68, 78 (Bankr. D.N.J. 2007) ("[E]quitable estoppel applies when one party rightfully relies on an intentional or negligent representation of fact by another party, who is estopped from later denying that representation because the relying party would be injured."); *In re Petersburg Regency LLC,* 540 B.R. 508, 543 (Bankr. D.N.J. 2015) (Papalia, J.) ("Equitable estoppel requires a representation of fact upon which the counterparty had a right to rely and did rely to his detriment.").

Notably, the equitable argument presented by WDS has already been favorably received by the Court.  Transcript of July 22, 2025 Hearing (Docket No. 22, "July 22 Transcript"), pg. 29:23-24 ("I see equitable estoppel, and I see that argument.  I see that argument.  I really see that argument.").  As the Court has already weighed in on the plausibility of this argument, dismissal of Counterclaim I is unwarranted.

7

Given the Court's prior statements and rulings, WDS should absolutely be entitled to take discovery on this issue and to present a case to the Court that either the Ordinary Course Acknowledgement did not require Court approval or alternatively, that equitable grounds exist to enforce the Ordinary Course Acknowledgment notwithstanding a failure to obtain such approval. The Motion as to Counterclaim I should be denied.

## II.    WDS Plausibly Asserts a Counterclaim for Fraudulent Inducement

In Counterclaim II, WDS plausibly asserts that because of the position taken by the Plan Administrator – the successor to and sole representative of the Debtors – on the enforceability of the Ordinary Course Acknowledgment, such position should be imputed to the Debtors, leading to the conclusion that WDS was fraudulently induced into entering into the Agreement.  The Plan Administrator seeks dismissal of Counterclaim II on two primary bases:  first, that because WDS was represented by counsel, it could not have reasonably relied on a conclusion of law reached by the Debtors, and second, that because the Plan Administrator is an entirely distinct entity, his conduct cannot be imputed onto the Debtors.  Neither basis is sufficient to defeat Counterclaim II at the dismissal stage.

### 1.    The Fact That WDS Was Represented by Counsel is Not Fatal to its Reasonable Reliance Argument.

As an initial matter, WDS has plausibly alleged that it reasonably relied on the Debtors' representations that they were authorized to agree to the Ordinary Course Acknowledgement, and that the Agreement did not require Court approval.   WDS expressly alleged in the Counterclaims that the Ordinary Course Admission was a material component of the Agreement, and that absent the Ordinary Course Admission, it would not have entered into the Agreement and provided the Debtors with the substantial benefits they received thereunder.  Counterclaims, ¶¶ 8, 25.  While the Court acknowledged that definitive evidence of such reliance was not in the record at the

Motion for Summary Judgment stage, it also recognized that such evidence was likely to be introduced. August 12 Transcript, pg. 23:3-9 ("I think that would be completely unfair [to sever the Ordinary Course Admission] and there was a conclusory statement that it was not critical to the overall agreement. While that would probably require some fact-finding, I'm going to say that World Distribution Services is going to say that was absolutely essential to our agreement, but that remains to be seen. I think they did say it already in an affidavit.")

Regardless, the Plan Administrator asserts that because WDS was represented by counsel at the Agreement stage, it is prohibited from relying on the Debtors' representations. This position is both inaccurate and overly rigid. In reality, courts have held that the presence of legal counsel in a transaction does not preclude a plaintiff from asserting reasonable reliance on a misstatement, but consider legal representation as a factor in determining whether such reliance was reasonable. This is consistent with the proposition that a "determination of reasonableness [is] to be made on a case-by-case basis based on all of the surrounding circumstances." *AES Corp. v. Dow Chem Co.*, 325 F.3d 174, 179 (3d Cir. 2003); *see also Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.*, 343 F.3d 189, 195 (2d Cir. 2003) (in evaluating reasonable reliance, courts look at "the entire context of the transaction, including factors such as its complexity and magnitude, the sophistication of the parties, and the content of any agreements between them.").

The Plan Administrator opportunistically attempts to introduce a far more rigid standard for reasonable reliance, in which the mere presence of counsel by the plaintiff, without more, is fatal to a fraudulent misrepresentation claim. To make this hoped-for standard appear legitimate, he has to resort to citing non-precedential and factually distinguishable decisions, cherry-picking elements of those decisions that appear to validate him.

- *Wilhelm v. Pray, Price, Williams & Russel*, 186 Cal. App. 3d 1324, 1332 (1986) is

9

a decision based on California law, which is inapplicable.  Further, the relevant facts are far different, involving the plaintiff's allegation that opposing counsel made false representations in order to convince the plaintiff, who was represented at the time, to dismiss a breach of note suit with prejudice.  There, the court cited to plaintiff's representation by counsel as a significant factor in dismissing the fraudulent misrepresentation claim.

- *Douglas v. Norwood*, 132 F.Supp. 3d 834 (N.D. Miss. 2015) did not even involve a fraudulent misrepresentation claim, but rather, centered around the application of judicial and equitable estoppel.  Further, it is clear from the decision that the misrepresentation at issue – a statement by opposing counsel that the statute of limitations had not run when it actually had – was inadvertent rather than intentional.  132 F.Supp.3d at 852.

The Plan Administrator also suggests that under no circumstances could WDS rely upon the Debtors' representations concerning the ordinary course of business defense because such defense involves a mixed question of law and fact, but cites to no authority in support of that proposition.  This is telling, because courts examining such issues have held that representations involving mixed questions of law and fact may be actionable if they imply the existence of facts justifying the legal conclusion expressed.  *Lyon Fin. Servs. v. Ill. Paper & Copier Co.*, 732 F.3d 755, 759 (7th Cir. 2013); *United States ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739, 756, 143 S. Ct. 1391, 216 L. Ed. 2d 1 (2023) ("[S]tatements involving some legal analysis remain actionable if they 'carry with [them] by implication' an assertion about 'facts that justify' the speaker's statement.") (quoting Restatement (Second) of Torts § 545, Comment c).  Accordingly, even accepting as true the Plan Administrator's statement that statements of law are inherent in a

determination as to the applicability of the ordinary course of business defense, it is also true that facts must exist to justify the conclusion reached.[3]

In any event, the Plan Administrator is missing the mark.  Counterclaim II does not assert that the *Ordinary Course Admission* represents a fraudulent representation, but rather, that the Debtors' representation that Court approval of the Agreement was not required in light of the Plan Administrator's subsequent actions.  Even if we assume that that too is a mixed question of law and fact, ample justification exists for such claim to survive dismissal notwithstanding the fact that WDS was represented by counsel at the time:

Here, the Debtors were represented by Kirkland & Ellis, one of the largest and most sophisticated law firms in the world with a leading debtor-side bankruptcy practice.  Having appeared before this Court many times, the Court is undoubtedly familiar with Kirkland & Ellis's sophistication and alluded to this at the July and August 2025 hearings on the Motion for Summary Judgment.  It follows that Kirkland & Ellis would be in a far better position, being in the lead position on the entire Bed, Bath & Beyond bankruptcy, having drafted all of the pleadings at issue in this matter, and having appeared before the Court on all hearings in this matter, than WDS to make an educated representation on whether or not Court approval of the Agreement was necessary.  *See Yokohama*, 358 F.3d at 621 (fraud claims for misrepresentations of law may be brough where the party making the misrepresentation "purports to have special knowledge" or "has some other special reason to expect that the recipient will rely on his opinion").  This goes far beyond simply consulting the Bankruptcy Code or Bankruptcy Rules, because it is common –

---

[3] In fact, courts have recognized that even in cases involving pure questions of law, there are exceptions to the general rule that misstatements are not actionable in fraud. *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 621 (9th Cir. 2004).

especially in large chapter 11 cases – for Code and Rules mandates to be modified, waived, or supplemented.[4]  There is no question that Kirkland & Ellis would be uniquely situated to make a representation as to whether the Agreement required Court approval given its immersion in the bankruptcy.  By contrast, WDS's counsel did not have a role in the bankruptcy cases outside of its representation of WDS on discrete issues involving its trade relationship with the Debtors, and could not be expected to have the same mastery of a complex docket involving dozens of debtors and numerous substantive pleadings as the Debtors' own attorneys.

Moreover, there are questions of fact concerning whether the Debtors were permitted to enter into the Agreement without Court approval that require discovery.  Specifically, the Debtors possessed authority under their debtor-in-possession financing orders to dispose of collateral having a value of less than $250,000 without further order of the Court or consent of the DIP Lender.  Interim Order Approving Use of Cash Collateral and Postpetition Financing, pg. 58, ¶ 25 [Case No. 23-13359, Docket No. 76].[5]  If the Debtors valued avoidance action claims against WDS below this threshold – an entirely plausible conclusion when factoring in defenses, and given the Debtors' willingness to issue the Ordinary Course Acknowledgment – the Court approval issue must be decided in WDS's favor.  WDS should be given the opportunity to conduct discovery on this issue.

Courts routinely admit into evidence statements made by opposing counsel for purposes of

---

[4] In fact, was the Critical Lien Motion itself not a deviation from the Bankruptcy Code's general mandate that pre-petition claims cannot be paid outside of a confirmed plan?

[5] The Final Order on this Cash Collateral and Postpetition Financing Motion [Case No. 23-13359, Docket No. 25] was entered on June 15, 2023 [Case No. 23-13359, Docket No. 729] and contained the same language as the Interim Order cited above.  WDS further notes that the Plan Administrator misrepresents in the Motion to Dismiss that Court approval was required for collateral dispositions under $250,000; in fact, this is not the case.

reasonable reliance matters. One court found that because the adversarial process in civil cases "insures trustworthiness," as a general rule, statements made by an attorney concerning any matter within the scope of his employment are admissible under Rule 801(d)(2)(D). *United States v. D.K.G. Appaloosas, Inc.*, 630 F. Supp. 1540, 1564 (E.D. Tex. 1986), aff'd, 829 F.2d 535 (5th Cir. 1986) (finding that statements made by government attorneys concerning the ownership of seized property were admissible). Ownership could be argued a matter of law and this was allowed into evidence.

Similarly, the court in *Williams v. Union Carbide Corp.* held that, generally, statements made by an attorney concerning a matter within the scope of his employment may be admissible against the party who retained the attorney. 790 F.2d 552 (6th Cir. 1986) (finding that the trial court erred in prohibiting the defendant from using the allegations made in the plaintiff's complaint in another lawsuit where the plaintiff's attorney was fully authorized to act and speak for the plaintiff).

And the court in *Harris v. Steelweld Equipment Co., Inc.* held that statements made by the plaintiff's previous workers' compensation attorney in a letter to a witness two years before an action was filed regarding the plaintiff's employability was an admission by a party opponent clearly admissible pursuant to Rule 801(d)(2)(D). 869 F.2d 396, 403-04 (8th Cir. 1989) (finding that if the district court had sustained appellants' objection to the admissibility of statements in a letter from appellants' workers' compensation attorney, it would have been "a clear abuse of discretion requiring reversal").

In addition, the U.S. Court of Appeals for the Second Circuit has identified several guideposts that it uses to determine the admissibility of these kinds of statements. In *United States v. McKeon*, the court held that statements made by a party's prior counsel are admissible as

statements by the party opponent as long as the statements are nontestimonial in nature and are "clear and unambiguous" statements of fact. 738 F.2d 26, 30 (2d Cir. 1984). Most relevant, the court in McKeon identified certain criteria that must be satisfied before permitting the evidentiary use of statements by counsel:

- First, the court must be satisfied that the prior statement is an assertion of fact that is inconsistent with the assertion at a later trial. The inconsistency between the statements must be "clear and of a quality which obviates any need for the trier of fact to explore other events at the prior trial." *Id.* at 33.

- Second, the court must determine that the statements of counsel are the equivalent of testimonial statements by the party; there must be something beyond the attorney-client relationship to show participation by the party.

- Third, the trial court must "determine by a preponderance of the evidence that the inference the prosecution [or another party] seeks to draw from the inconsistency is a fair one and that an innocent explanation… does not exist." *Id.* at 33. If opposing inferences are of equal weight or the preponderance of evidence favors the innocent explanation, the prior statement should be excluded.

For the foregoing reasons, the Motion to Dismiss should not be granted simply because WDS was represented by counsel in connection with the Agreement.

**2.      WDS Has No Obligation to Demonstrate the Ordinary Course Admission to be True, Certainly Not at the Pleadings Stage.**

Once again, the Plan Administrator attempts to insert himself into the minds of WDS, boldly asserting (with absolutely no evidence) that WDS should have known the Ordinary Course Acknowledgement to be false, and demanding proof that WDS believed all pre-petition transfers to be in the ordinary course of business.  In so doing, the Plan Administrator is asking far more of

WDS than is required at the pleadings stage.

Contrary to the Plan Administrator's ill-informed allegations, WDS has repeatedly alleged – including in the Counterclaims – that it relied upon the Ordinary Course Admission in entering into the Agreement. It had every reason to rely upon the Debtors' statements, especially considering who made those statements: Kirkland & Ellis, as well as the Debtors' general counsel, himself a sophisticated attorney with first-hand knowledge of the Debtors' business and vendor relationships as well as access to the Debtors' books and records. Moreover, there is absolutely no evidence in the record, and certainly no allegations made in the Counterclaims, that WDS "knew or should have known" that the Ordinary Course Admission was false. Rather, the Plan Administrator simply disagrees with the Ordinary Course Admission and regrets that the Debtors agreed to provide it.

At this stage in the case, requiring proof from WDS that it believed the pre-petition transfers to be in the ordinary course of business is unnecessary. WDS admits entering into the Agreement containing the Ordinary Course Acknowledgement, asserts that the Ordinary Course Acknowledgment was a material element of the Agreement, and that is more than sufficient to plausibly allege that the Plan Administrator taking a contrary position constitutes fraud in the inducement.

**3.    The Plan Administrator is the Successor of the Debtors.**

In seeking dismissal of Counterclaim II, the Plan Administrator attempts to distance himself from the Debtors, realizing that the Debtors agreed to an Ordinary Course Acknowledgment that, if upheld, will be fatal to his case (and accordingly, his and his counsel's ability to be compensated). His primary basis for so asserting is a handful of reported decisions in which a "representative of the estate" under section 1123(b)(3)(B) of the Bankruptcy Code is

legally distinct from a debtor or trustee.   These reported decisions bear no relation whatsoever to the present case and are factually and legally distinguishable. Both the *Bond* and *GUE Liquidation* cases dealt with a jurisdictional issue – specifically, whether a bankruptcy court had jurisdiction over a liquidating trustee's tax refund claim, despite section 505(a) of the Bankruptcy Code stating that only "the trustee" may file such claims.   Here, the determination of whether a liquidating trustee is a "trustee" for purposes of the Bankruptcy Code is not at all germane.

In fact, there should be no doubt – based on the Plan Administrator Agreement – that the Plan Administrator and the Debtors are one and the same.   Case No. 23-13359, Docket No. 2133, Ex. B, § 2.1 (Plan Administrator "shall retain and have all the rights, powers and duties of a trustee in bankruptcy and become the *exclusive representative* of the Wind-Down Debtors."). Furthermore, the Court has already disagreed with the Plan Administrator's "separateness" argument in his ruling on the MSJ.   July 22 Transcript, pg. 26:18-20 ("This is the rub.  You, the Plan Administrator, have no more or no less rights and obligations than the Debtors."); pg. 28:15-18 ("But you're the Debtor position, because you're the Debtor.   I'm not – I can't separate you, the Plan Administrator, from the Debtor, even though it feels like that's what you're asking."); pg. 29:6-7 ("It's not – it's – it's not that [the Plan Administrator is] a successor, it's that they're the same.").

WDS has sufficiently alleged that the Debtors' actions and representations are imputed to the Plan Administrator (and vice versa), and therefore, the Plan Administrator cannot have Counterclaim II dismissed on those grounds.

### 4.    Despite the Plan Administrator's Protestations, He Can be Held Liable for His Conduct.

The Plan Administrator argues that he cannot be liable for any misrepresentation because the Confirmed Plan indemnifies him.   To prove this point, he cites to the confirmed Plan, Article

VII(D).

His immunity, however, is not unlimited.  Both the Plan and the Plan Administrator

Agreement expressly provide that the Plan Administrator's indemnification does not extend to

fraud, and the limitation of liability provisions therein also provide express fraud carveouts:

> The Plan Administrator and all professionals retained by the Plan Administrator,
> each in their capacities as such, shall be deemed indemnified, except for fraud,
> willful misconduct, or gross negligence, in all respects by the Wind-Down Debtors.
> The Plan Administrator may obtain, at the expense of the WindDown Debtors and
> with funds from the Combined Reserve, commercially reasonable liability or other
> appropriate insurance with respect to the indemnification obligations of the Wind-
> Down Debtors. The Plan Administrator may rely upon written information
> previously generated by the Debtors

Plan, Case No. 23-13359, Docket No. 2172, Article VII(D).

> The Plan Administrator shall not be liable for any mistake of fact or law or error of
> judgment or any act or omission of any kind *unless* it constitutes gross negligence,
> willful misconduct or intentional fraud.

Plan Administrator Agreement, Case No. 23-13359, Docket No. 2133, Ex. B, § 2.16 (emphasis

added).

> [B]y accepting this appointment and in consideration for same, [the Plan
> Administrator] shall have no personal liability to any person or entity, except to the
> extent his or her actions are deemed to constitute gross negligence, willful
> misconduct or intentional fraud based on an unappealable Final Order of the
> Bankruptcy Court.

*Id.*

As Counterclaim II sounds in fraud, it falls within the exceptions to the foregoing limitation

of liability and indemnification provisions and does not shield the Plan Administrator from

liability.

## III.    A Plausible Claim for Breach of Fiduciary Duty Has Been Pled.

In Counterclaim III, WDS asserts that the Plan Administrator breached his fiduciary duties

to WDS by continuing to prosecute his preference claims notwithstanding the existence of the

Ordinary Course Acknowledgement.  The Plan Administrator seeks dismissal of Counterclaim III on the bases that (i) his fiduciary duties run to *all* creditors (not just WDS) and (ii) prosecution of estate avoidance actions is consistent with his fiduciary duties.  In a vacuum, the Plan Administrator's statements are accurate.  But under the facts of this case, they are not.

The Plan Administrator Agreement is governed by New Jersey law.  In New Jersey, there are four elements that must be satisfied in order to prevail on a claim for breach of fiduciary duty: (i) the existence of a fiduciary relationship between the parties; (ii) a breach of fiduciary duties; (iii) causation; and (iv) damages.  *Namerow v. PediatriCare Assocs., LLC*, 461 N.J. Super. 133, 146 (Ch. Div. 2018).  Each of these elements have been plausibly alleged and the Plan Administrator's anecdotal disagreements are far from sufficient to justify dismissal.

First, there is no reasonable dispute that the Plan Administrator and WDS are in a fiduciary relationship; in fact, the Plan Administrator admits this in the Motion.   Motion, ¶ 46.

Second, WDS has plausibly alleged that the Plan Administrator breached his fiduciary duty to WDS by intentionally breaching the Agreement and continuing to pursue causes of action against WDS notwithstanding the Ordinary Course Acknowledgement.  While WDS does not disagree with the general proposition that individuals in a position similar to the Plan Administrator commonly prosecute avoidance actions for the benefit of the estate and creditors, and that their counsel are commonly compensated on a contingency fee basis, those general propositions do not absolve the Plan Administrator of responsibility should it be determined that he and his counsel placed their own self-interest ahead of WDS and other creditors.  This is especially the case where WDS has plausibly alleged that if the Ordinary Course Acknowledgment is disregarded, and a judgment against WDS results, it should be entitled to assert an offsetting claim against the estates in the amount of the judgment.  The result of this would be that the estates

18

would be *worse* off than they would be if the action is not prosecuted at all, regardless of the outcome.

WDS has also plausibly pled the third and fourth elements (causation and damages). It is beyond dispute that the Plan Administrator's conduct – namely, prosecuting this action and actively advocating for the Ordinary Course Acknowledgment to be disregarded – is the cause of any damages incurred by WDS. And WDS has sufficiently alleged the nature and extent of such damages, including the amount of any judgment obtained against WDS, attorneys' fees and costs incurred in the defense of the adversary proceeding, and the loss of value associated with the Waived Prepetition Claim.

Finally, while WDS does not dispute that the Plan Administrator has a duty to investigate, prosecute, and compromise causes of action (as set forth in the Plan and Plan Administrator Agreement), the Plan Administrator ignores the fact that such duty includes the obligation to *refrain* from prosecution when the costs of doing so would exceed any potential benefits, consistent with a duty to maximize the estate. *In re McLean Wine Co.*, 463 B.R. 838, 851 (Bankr. E.D. Mich. 2011) (a trustee's "fiduciary duty requires counsel for a trustee to discontinue litigation when it becomes apparent that the fees charged will outpace the maximum possible recovery"); *Matter of Taxman Clothing Co.*, 49 F.3d 310, 315 (7th Cir. 1995) ("It should go without saying that neither the trustee in bankruptcy nor the trustee's lawyer has a duty to collect an asset of the debtor's estate if the cost of collection would exceed the value of the asset."); *In re Keene Corp.*, 205 B.R. 690, 696 (Bankr. S.D.N.Y. 1997) ("Once it becomes reasonably obvious that the prospective costs of commencing or continuing litigation will exceed any benefit to the estate, the attorney is duty bound to abandon the claim."). Here, given the viable Counterclaims asserted by WDS, the Plan Administrator and his counsel are facing the exact decision point addressed by the

foregoing courts.  Pressing on with this litigation in the face of a value-depleting result for the

estates is a breach of the Plan Administrator's fiduciary duties.

## <u>CONCLUSION</u>

For the foregoing reasons, WDS respectfully requests that this Court deny the Motion as

to each of WDS's Counterclaims.

Dated:  January 6, 2026                              Respectfully submitted,

                                                     TUCKER ELLIS LLP


                                                     _s/ Maha M. Kabbash_
                                                     Maha M. Kabbash, Esq. (MK-0163)
                                                     TUCKER ELLIS LLP
                                                     1776 On the Green
                                                     67 E. Park Place, Ste. 500
                                                     Morristown, NJ 07960
                                                     Telephone: (862) 261-2532

                                                     Brian J. Jackiw (admitted _pro hac vice_)
                                                     Thomas R. Fawkes (admitted _pro hac vice_)
                                                     TUCKER ELLIS LLP
                                                     233 South Wacker Drive
                                                     Suite 6950
                                                     Chicago, Illinois 60606-9997
                                                     Telephone: (312) 624-6300

                                                     _Counsel to Defendant and Counter-Plaintiff_
                                                     _World Distribution Services LLC_

## CERTIFICATE OF SERVICE

I hereby certify that, on January 6, 2026, a true and correct copy of DEFENDANT AND COUNTER-PLAINTIFF WORLD DISTRIBUTION SERVICES LLC'S OPPOSITION TO PLAINTIFF AND COUNTER-DEFENDANT'S MOTION TO DISMISS COUNTERCLAIMS PURSUANT TO FED. R. CIV. P. 12(B)(6) was electronically filed and was served via electronic mail upon counsel of record in this proceeding.


Dated: January 6, 2026                              *s/ Maha M. Kabbash*_____
                                                    Maha M. Kabbash, Esq.

                                                    *Counsel to Defendant and Counter-Plaintiff*
                                                    *World Distribution Services LLC*

7192901.2