| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY**<br>**Caption in Compliance with D.N.J. LBR 9004-1(b)**<br>Marianna Udem<br>Brigette McGrath<br>Nicholas C. Brown<br>ASK LLP<br>60 East 42nd Street, 46th Floor<br>New York, NY 10165<br>Telephone: (212) 267-7342<br>Facsimile: (212) 918-3427<br>mudem@askllp.com<br>bmcgrath@askllp.com<br>nbrown@askllp.com<br><br>*Special Counsel to the Plan Administrator* | |
| In re:<br><br>BED BATH & BEYOND, INC., *et al.*,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 23-13359 (VFP)<br><br>(Jointly Administered) |
| Michael Goldberg, as Plan Administrator for 20230930-DK-Butterfly-1, Inc. (f/k/a/ Bed Bath & Beyond Inc.),[2]<br>Plaintiff,<br><br>v.<br><br>World Distribution Services LLC,<br>Defendant. | Adv. No. 24-01367 (VFP) |

**REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO DISMISS ALL COUNTERCLAIMS OF WORLD DISTRIBUTION SERVICES LLC <u>PURSUANT TO FED. R. CIV. P. 12(B)(6)</u>**

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby. The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 650 Liberty Avenue, Union, New Jersey 07083.

[2] Pursuant to the *Certificate of Amendment of the Certificate of Incorporation of Bed Bath & Beyond Inc.*, which was filed with the State of New York Department of State on September 21, 2023, the name of the entity formerly known as "Bed Bath & Beyond Inc." was changed to *20230930-DK-Butterfly, Inc.* [Filing ID No. 230921001833 DOS ID 315602].

1

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ………………………...……….…………......………………3

SUMMARY OF ARGUMENT ................................................................................................ 4

ARGUMENT ...........................................................................................................................5

A.  The First Counterclaim Should Be Dismissed In Accordance With Third Circuit Precedent. ………………………………………………………………………………………....5

B.  WDS Has Not Plausibly Alleged Reasonable Reliance Where The Alleged Misstatement Concerns a Matter of Law and WDS Relied on its Own Sophisticated Bankruptcy Counsel. ……………………………………………………………………..……..……………..8

   i.   Representation Regarding Need for Court Approval Necessarily Involves the Application of Law and is Not Actionable…………….….………………………8

   ii.  The Yokohama Decision Supports Dismissal Because WDS Was Represented by Competent Bankruptcy Counsel……………….……………………………………9

   iii. The Interim DIP Order Did Not Allow the Debtors to Waive Preference Claims Without Court Approval……………………………………………………………...12

C.  There Can Be No Breach of Fiduciary Duty Where the Plan Administrator is Acting Consistent With the Bankruptcy Code, Bankruptcy Rules, and Third Circuit Precedent, and WDS Has Offered No Credible Allegation of Improper Motive…………………………………..13

CONCLUSION ..................................................................................................................... 16

# TABLE OF AUTHORITIES

**CASES**

*D'Urso v. BAMCO, Inc.*,
    2023 WL 5623945 (D.N.J. Aug. 31, 2023) ……………………………………………….7

*Elbeco Incorporated v. National Retirement Fund*,
    128 F. Supp. 3d 849 (E.D. Pa. 2015) ……………………………………………………….7

*Gant v. Ragone*,
    2020 WL 6797125 (D.N.J. Nov. 19, 2020) ………………………………………………..7

*In re Keene Corp.*,
    205 B.R. 690 (Bankr. S.D.N.Y. 1997) …………………………………………………..15

*In re Martin,*
    91 F.3d 389 (3d. Cir. 1996) ……………………………………………………………..13

*In re McLean Wine Co., Inc.*,
    463 B.R. 838 (Bankr. E.D. Mich. 2011) ………………………………………………...15

*In re Roth American*,
    975 F.2d 949 (3d Cir. 1992) …………………………………………...………….5, 6, 9

*Matter of Taxman Clothing Co.*,
    49 F.3d 310 (7th Cir. 1995) ……………………………………………………………..15

*Miller v. Yokohama Tire Corp.*,
    358 F.3d 616 (9th Cir. 2004) …………………………………………………………8-12

*Palan v. Inovio Pharm. Inc.*,
    653 Fed. App'x 97 (3d Cir. 2016) ……………………………………….……………..7

*Prusky v. Phoenix Life Ins. Co.*,
    2003 WL 1256225 (E.D. Pa. Mar. 4, 2003) ……………………………………………..7

*Swift & Co. v. Hocking Valley Ry.*,
    243 U.S. 281, 37 S.Ct. 287, 61 L.Ed. 722 (1917) …………………………...………….9

**STATUTES AND RULES**
11 U.S.C. § 363 …………………………………………………..……………………. 9, 12
Federal Rule of Bankruptcy Procedure 9019 …………………………………………... 9

**SECONDARY SOURCES**
American Jurisprudence 2nd of Fraud and Deceit § 97 (2001) ……………….………..8-9, 10

3

Michael Goldberg, as Plan Administrator (the "Movant" or "Plan Administrator") for 20230930-DK-Butterfly-1, Inc. (f/k/a/ Bed Bath & Beyond Inc.) and its affiliated debtors (each, a "Debtor" and collectively, the "Wind-Down Debtors" or "Debtors") in the above-captioned case, hereby files this *Reply in Support of Plaintiff's Motion to Dismiss All Counterclaims of World Distribution Services, LLC Pursuant to F.R.C.P. 12(b)(6)* (the "Reply"). In support hereof, Movant shows as follows:

**SUMMARY OF ARGUMENT**

The WDS Response Brief does nothing to cure the WDS Counterclaims' pleading deficiencies, and therefore the Counterclaims should be dismissed in their entirety. Third Circuit precedent requires that the WDS counterclaim for breach of a contract that is rendered unenforceable for failure of notice or court approval must be dismissed. The prior invitation by this Court for WDS to show that the underlying Ordinary Course Statement would have been approved has gone unanswered, as WDS offers no allegations in support of such theory. The First Counterclaim therefore fails to satisfy the applicable pleading standards.

The WDS Response Brief reinforces the conclusion that WDS cannot establish its counterclaim for fraudulent inducement, because the actionable representation is a statement of the application of law and the Debtors did not have "superior knowledge" in light of WDS' counsel's extensive involvement with the Agreement. The Second Counterclaim must also fail.

WDS also fails to assert well pleaded facts in support of its conclusory allegations that the Plan Administrator is acting in his own interests and to the detriment of the estate by pursuing the preference claim against WDS. That a preference defendant takes issue with its liability is nothing new in avoidance litigation and does not serve as the basis for a breach of fiduciary duty claim. The Third Counterclaim should also be dismissed.

4

# ARGUMENT

## A. The First Counterclaim Should Be Dismissed In Accordance With Third Circuit Precedent.

1.  The Third Circuit decision *In re Roth American* dictates that WDS' breach of contract claim is not plausible. In *In re Roth American*, the Third Circuit analyzed whether a party to a post-petition agreement could bring a breach of contract claim against the debtors. The Third Circuit defined the issue as follows:

> The validity of the Union's claim for breach of the 1988 memorandum agreement turns on whether notice to creditors and a hearing before the bankruptcy court were required for the 1988 memorandum agreement to be enforceable. Only if the agreement is enforceable, would we need to answer the extent to which the Union is entitled to damages for its breach.

*In re Roth American*, 975 F.2d 949, 952 (3rd Cir. 1992). After holding that the agreement was "not a transaction in in the ordinary course of business," the Third Circuit affirmed the lower court's ruling that "notice and a hearing in the bankruptcy court on that agreement was required for it to be enforceable." *Id.* at 954.

2.  The same analysis applies in this case, and in fact, has already largely been performed by this Court in connection with its order denying in part WDS' motion for summary judgment (the "WDS Summary Judgment Motion"). In ruling on the WDS Summary Judgment Motion, this Court concluded that the Ordinary Course Statement was tantamount to a preference claim waiver and was therefore not a transaction in the ordinary course of business.[3] This Court

---

[3] 8-12-2025 Hearing Transcript at p. 8 ("So whether you call it a release, whether you call it a waiver, whether you call it an admission, the substantive effect in each instance is exactly the same. And that's the problem I have with it.")

5

then determined that the Ordinary Course Statement was therefore one that required notice and court approval to be enforceable.[4]

3. What this Court has not yet determined, because the issue was not directly before the Court in the WDS Summary Judgment Motion, but is now ripe in the context of this Motion, is whether a breach of contract claim for failing to honor the Ordinary Course Statement can succeed in light of the failure of notice and court approval. In support of dismissal, the Plan Administrator relies on the Third Circuit decision in *In re Roth American* which unequivocally held that a claim for breach of an unenforceable contract for failure of notice and court approval must fail.

4. In an effort to bypass Third Circuit precedent, WDS highlights this Court's invitation for WDS to "show that [the Ordinary Course Statement] would have been approved anyway," among other defenses and claims WDS may have including equitable estoppel.[5] Critically, however, the First Counterclaim does not allege any facts or even assert that the Court would have approved the Ordinary Course Statement had it been properly noticed. There are no factual allegations to support a contention that the Ordinary Course Statement would be approved (for example, allegations that the DIP lenders were properly informed of the proposed preference claim waiver, or that the DIP lenders or other parties in interest would not have objected if the preference claim waiver was properly noticed). Nor does WDS introduce allegations showing why creditors would support the waiver of a nearly $2 million preference claim in light of the other consideration exchanged under the Agreement. Absent any factual allegations explaining how a

---

[4] 8-12-2025 Hearing Transcript at p. 12 (". . . I just can't get past the cases that say that you need to have transactions that are outside the ordinary course of business or settlements approved by the Court on notice to creditors. Otherwise, they're unenforceable . . . .")

[5] 8-12-2025 Hearing Transcript at p. 12.

patently unenforceable contract should be deemed enforceable, the First Counterclaim fails to satisfy the plausibility standard and must be dismissed.

5. In its Response Brief, WDS defends the propriety of the First Counterclaim by implicating the doctrine of equitable estoppel. WDS' reliance on equitable estoppel does not cure the pleading deficiencies in the First Counterclaim. In order to invoke equitable estoppel, a party "must establish three elements: (1) misrepresentation by another party; (2) which [the party] reasonably relied upon (3) to [the party's] detriment." *Palan v. Inovio Pharm. Inc.*, 653 Fed. App'x 97, 100 (3d Cir. 2016). Importantly for purposes of this Motion, the doctrine of equitable estoppel is not an element of a breach of contract claim. Even if WDS had pled the elements of equitable estoppel in the First Counterclaim – it did not – the doctrine does nothing to establish a claim for breach of contract. In fact, the majority of courts within the Third Circuit agree that equitable estoppel cannot even operate as a stand-alone cause of action. *See, e.g., Gant v. Ragone*, 2020 WL 6797125, at *9 (D.N.J. Nov. 19, 2020) ("Under New Jersey law, equitable estoppel is not recognized as an independent claim for relief."); *Prusky v. Phoenix Life Ins. Co.*, 2003 WL 1256225, at *6 (E.D. Pa. Mar. 4, 2003) (finding that "neither Pennsylvania law nor the United States Court of Appeals for the Third Circuit recognizes equitable estoppel as a separate cause of action."); *Elbeco Incorporated v. National Retirement Fund*, 128 F. Supp. 3d 849, 863 (E.D. Pa. 2015) (same); *but see D'Urso v. BAMCO, Inc.*, 2023 WL 5623945, at * n.13 (D.N.J. Aug. 31, 2023) (recognizing a potential conflict in caselaw as to whether New Jersey courts recognize equitable estoppel as an independent cause of action).

6. Perhaps with this understanding in mind, the Counterclaims do not include an affirmative cause of action for equitable estoppel anywhere in its Counterclaims. Instead, WDS asserts the doctrine of equitable estoppel within its Answer as an affirmative defense. But whether

7

WDS has pled equitable estoppel as an affirmative defense is separate and apart from the question of the First Counterclaim's plausibility. Therefore, the claim for breach of contract must be dismissed.

B. **WDS Has Not Plausibly Alleged Reasonable Reliance Where The Alleged Misstatement Concerns a Matter of Law and WDS Relied on its Own Sophisticated Bankruptcy Counsel.**

7. At the outset, the WDS Response Brief makes an important clarification that the focus of its Second Counterclaim is solely on the representation that the Agreement did not require court approval and not the Ordinary Course Statement:

> Counterclaim II does not assert that the *Ordinary Course Admission* represents a fraudulent representation, but rather, that the Debtors' representation that Court approval of the Agreement was not required . . .

WDS Response Brief at p. 11 (emphasis in original). Therefore, to the extent WDS has pled that the Ordinary Course Statement was a fraudulent representation, such claim can be dismissed.

8. Thus, for purposes of this Motion and the Second Counterclaim, the Court need only determine if the representation that an agreement does not require court approval can serve as the basis for a fraudulent inducement claim where (i) the representation concerns a matter of law, and (ii) WDS relied on its own sophisticated bankruptcy counsel, who drafted the alleged misrepresentation. As set forth in the Motion and below, WDS has not (and cannot) state an actionable claim for fraudulent inducement under these circumstances.

   i. Representation Regarding Need for Court Approval Necessarily Involves the Application of Law and is Not Actionable.

9. The Response Brief fails to rebut the general rule that a person cannot bring an actionable claim for fraudulent misrepresentation where the representation at issue is a statement regarding the application of law. This general rule is reiterated in case relied on by WDS, *Miller v. Yokohama Tire Corp.,* 358 F.3d 616 (9th Cir. 2004) (citing *Am. Jur. 2d of Fraud and Deceit* §

8

97 (2001)), which states "It is . . . well settled, as a general rule, that fraud cannot be predicated upon misrepresentation of law or misrepresentations as to matters of law."

10. There can be no doubt that a statement concerning the need for court approval involves a question of law. *See, e.g., Swift & Company v. Hocking Valley Railway*, 243 U.S. 281, 289-90 (1917) ("If the stipulation is to be treated as an agreement concerning the legal effect of admitted facts, it is obviously inoperative; since the court cannot be controlled by agreement of counsel on a subsidiary question of law.")*;* 8-12-2025 Hrg. Transcript at p. 24 ("I also find that the Court is not bound necessarily by the stipulation or agreements, the ordinary course admission or the approval admission, because those are questions of law or mixed questions of law and fact as to which the Court has the ultimate authority.") This is especially the case where the purpose of the law involved – here the requirement for bankruptcy court approval – is intended to protect third parties (creditors of the bankruptcy estate) who would otherwise have no notice that an estate asset was being waived.

11. As discussed exhaustively in the parties' prior briefing and arguments regarding the WDS Summary Judgment Motion, the prerequisite of bankruptcy court approval for a preference claim waiver is derived from the Bankruptcy Code (11 U.S.C. § 363) and Bankruptcy Rules (Fed. R. Bankr. P. 9019). The consequence of failing to comply with these rules is that the unapproved waiver cannot be enforced. *In re Roth American*, 975 F.2d 949 (3d Cir. 1992).

    ii. <u>The Yokohama Decision Supports Dismissal Because WDS Was Represented by Competent Bankruptcy Counsel.</u>

12. WDS attempts to argue around the general rule precluding fraudulent misrepresentation claims over statements of law. Citing *Yokohama*, WDS argues that reliance is both reasonable and actionable if the maker of the misrepresentation "purports to have special knowledge" or there is "some other special reason" justifying reliance. WDS Response Brief at p.

11. While not controlling in this case, the *Yokohama* decision reinforces the Plan Administrator's position that the Second Counterclaim should be dismissed.

13. First, the *Yokohama* court reiterates the general rule that representations regarding the law cannot form the basis for a fraudulent misrepresentation claim. *Miller v. Yokohama Tire Corp.,* 358 F.3d at 621 ("It is . . . well settled, as a general rule, that fraud cannot be predicated upon misrepresentations of law or misrepresentations as to matters of law.") *Miller v. Yokohama Tire Corp.*, 358 F.3d at 621 (citing *Am Jur. 2d of Fraud and Deceit § 97* (2001)). Because the statement at issue concerns the ability of the parties to agree to waive a preference claim without court approval, the general rule necessarily applies.

14. Second, the *Yokohama* court described certain rare situations where exceptions to this general rule might apply, none of which are applicable to our case. The *Yokohama* court gave specific examples where superior knowledge might qualify under the exception to the general rule: where an attorney had superior knowledge vis-à-vis elderly laypersons, and where an insurance adjuster had superior knowledge over a dog bite victim. *Id.* The *Yokohama* court also explained that the main application of the exception's "other special reasons" clause involves cases where "the maker of the representation knows of some special characteristic of the recipient, such as lack of intelligence . . . which gives the maker special reason to expect the opinion to be relied on." *Id.* In contrast to the examples in *Yokohama*, the parties to the Agreement were on equal footing because they were both represented by experienced bankruptcy counsel.

15. In fact, it was WDS counsel who drafted and proposed the terms of the Agreement. The terms of the Agreement were composed in an email prepared by WDS' counsel and delivered to the Debtors and their counsel (the "WDS Email"), which began as follows:

> Pursuant to our discussion today, **we propose the following terms** for a post-petition agreement between the Debtors . . . and World Distribution Services.

10

*See* Counterclaims at ¶ 8 (citing Adv. Docket No. 12, Exhibit F). A copy of the WDS Email is attached hereto as **Exhibit 1.** To the extent a party such as WDS can even state a claim for fraudulent misrepresentation when the offending representation was prepared by its own counsel, the fact that WDS counsel exerted control over the framing and terms of the Agreement highlights its substantial influence in negotiations.

16.    WDS asks this Court to make a legal distinction between its law firm and that of the Debtors by comparing their respective levels of prestige and experience. While WDS' counsel's humility is admirable, any variance in legal knowledge between the law firms falls well short of the type of "special knowledge" necessary to justify reliance on a statement of the application of law. Far from an "elderly layperson" or one lacking in intelligence, WDS, itself a sophisticated corporation, at all times relied on its competent bankruptcy counsel with significant experience in bankruptcy cases. For WDS' counsel to suggest otherwise would be a contravention of its own representations in pleadings in this adversary proceeding[6] and representations appearing on its own website.[7] The degree of sophistication on the side of WDS is incomparable to the examples of unsophistication described in *Yokohama*. Moreover, Debtors' counsel was not so immersed in the bankruptcy case as to bestow upon it "special knowledge" regarding the need for court approval, when the Agreement was reached just 10 days after the Petition Date and WDS

---

[6]    *See* WDS reply memorandum in support of the WDS Summary Judgment Motion [Adv. Docket No. 21], ¶ 17 ("The Ordinary Course Admission itself is beyond impeachment. It was negotiated by WDS and the Debtors, whose representatives were sophisticated businesspeople, and who were represented by sophisticated bankruptcy counsel that certainly understood its import.")

[7]    *See* https://www.tuckerellis.com/services/bankruptcy/ (last visited January 8, 2026) (describing Tucker Ellis LLP's expertise in creditor representation and preference litigation matters involving chapter 11 cases). This website also promotes Tucker Ellis LLP's rankings among the leaders in legal practice, including 11 National and 50 Regional Rankings in the "Best Law Firms 2026" publication (including for bankruptcy litigation, and bankruptcy, creditor debtor rights, insolvency and reorganization law); 119 lawyers honored among "The Best Lawyers in America" and "Best Lawyers: Ones to Watch in America" for 2026 (including a bankruptcy attorney), and 29 lawyers and 10 practices recognized in Chambers USA 2025 (including a bankruptcy attorney). *See* https://www.tuckerellis.com/ (last visited January 8, 2026).

was already active in the case due to its designation as a critical vendor and receipt of payment in that capacity.[8]

17.     Third, the *Yokohama* decision supports Plaintiff's position because the court there enforced the general rule and dismissed the fraud claim, which is the very same result Plaintiff seeks here. *Miller v. Yokohama Tire Corp.*, 358 F.3d at 622. The *Yokohama* court's rationale in favor of dismissal applies in this case.

18.     In summary, because the statement in question involved a question of the application of law, and as WDS retained and relied on its own bankruptcy counsel to negotiate terms including the representation at issue, there is simply no foundation on which WDS can base reasonable reliance against the Plan Administrator.

 iii. The Interim DIP Order Did Not Allow the Debtors to Waive Preference Claims Without Court Approval.

19.     WDS also argues that there is a question of fact as to whether court approval for a preference claim waiver was necessary in light of a provision in the interim DIP-financing order (the "Interim DIP Order") requiring DIP lender consent to dispose of DIP collateral worth more than $250,000. A review of the Interim DIP Order confirms no such question of fact is present.

20.     For one, nowhere in the Interim DIP Order does the Court grant blanket authority for the Debtors to dispose of estate property outside the ordinary course of business without notice and a hearing as required under 11 U.S.C. § 363(b)(1). *See, e.g.,* Interim DIP Order, p. 37, ¶ 12 ("Nothing in this Interim Order shall authorize the disposition of any DIP Collateral outside the ordinary course of business, except as permitted by this Interim Order and (including the Carve-Out) the DIP Documents, and in accordance with the Approved Budget . . . .") Paragraph 25 of the

---

[8] Counterclaims at ¶ 4-5.

Interim Order requires DIP lender consent to dispose of any DIP collateral valued at more than $250,000 "other than ordinary course inventory sales and other dispositions . . . approved by order of the Bankruptcy Court or as otherwise provided for in the DIP Documents." Interim DIP Order, p. 58, ¶25. But this provision does not imply that the Debtors may sell property outside the ordinary course of business without separate court approval; rather, the carve-out for "ordinary course inventory sales" and other dispositions "approved by the court" reinforces the conclusion that any waiver of an estate cause of action would require approval by the court. In addition, the Interim DIP Order and supporting motion do not engage in a "sound business purpose" analysis as to preference claims, including but not limited to the preference claim against WDS. *In re Martin,* 91 F.3d 389, 395 (3d. Cir. 1996).

21. In any event, the Interim DIP Order expressly excludes chapter 5 causes of action from the definition of "DIP Collateral" until such time as a final order authorizing DIP financing is entered, which had not occurred at the time the Agreement was executed. *See* Interim DIP Order, p. 32, fn. 9 ("DIP Collateral" means . . . (c) subject to entry of a Final Order, the proceeds of any avoidance actions brought pursuant to Chapter 5 of the Bankruptcy Code").

C. <u>There Can Be No Breach of Fiduciary Duty Where the Plan Administrator is Acting Consistent With the Bankruptcy Code, Bankruptcy Rules, and Third Circuit Precedent, and WDS Has Offered No Credible Allegation of Improper Motive.</u>

22. WDS contends that the Plan Administrator and his counsel have breached fiduciary duties by pursuing a preference claim against WDS in the following ways: (1) prosecuting the claim despite the existence of a post-petition, pre-confirmation agreement between the debtors-in-possession and WDS containing a preference claim waiver, when such claim waiver was never noticed to creditors or approved by the Court in contravention of the Bankruptcy Code, Bankruptcy Rules, and Third Circuit precedent; and (2) proceeding under a compensation structure that

13

rewards the Plan Administrator and his counsel if the preference claim is successful, but provides for no compensation if the preference claim is unsuccessful.

23. The Plan Administrator is acting in accordance with the fundamental bankruptcy requirements for notice and court approval, as set forth in the Bankruptcy Code, Bankruptcy Rules, and Third Circuit precedent. The relationship of these binding principles to the undisclosed Ordinary Course Statement has been briefed, argued, and considered *ad nauseum* in the context of the prior WDS Motion for Summary Judgment. This Court expressly acknowledged these fundamental bankruptcy principles in refusing to enforce the Ordinary Course Statement on summary judgment. Acting consistent with binding statutory, rule, and Third Circuit precedent cannot form the foundation for a breach of fiduciary duty, and WDS should not be allowed to proceed on this ill-conceived basis.

24. In addition, WDS fails to plausibly allege that the Plan Administrator is putting his own interests above those of the estate or creditors. The Third Counterclaim makes bald-faced allegations that the Plan Administrator is pursuing this preference claim "in light of the pecuniary interests that both the Plan Administrator and his counsel have in the outcome of this litigation" and has "placed his own self-interest above the interests of the estates and creditors."[9] Initially, it is not enough to simply allege that a plaintiff stands to receive compensation in the event of a successful outcome; otherwise, every bankruptcy trustee would face a counterclaim for breach of fiduciary duty. WDS must plausibly plead far more to state a claim for breach of fiduciary duty.

25. In addition, there is simply no credible allegation that the Plan Administrator or his counsel is engaged in a self-serving conspiracy to run up litigation fees by pursuing this preference case to the detriment of the estate. Indeed, WDS' lively imagination concerning the motives of

---

[9] Counterclaims at ¶ 37-38.

14

Plaintiff is wholly rebutted by the realities of the bankruptcy case. As stated in his Motion, the Plan Administrator has filed more than 250 preference adversaries against various defendants. A cursory review of the docket in this case reveals that the Plan Administrator and his counsel have resolved or otherwise voluntarily dismissed more than 200 such adversaries to date. Moreover, neither the Plan Administrator nor his counsel is aware of any colorable claim by a preference defendant (other than WDS) that prosecution of these adversary proceedings is being undertaken outside of the interests of the estate.

26. Further, nothing in WDS' Response Brief rebuts the premise that Plaintiff's contingency fee structure shields the estate from the risk of incurring significant fees without a successful outcome. The handful of cases relied on by WDS address hourly rate scenarios, where the estate was facing excessive attorney fees as compared to the amount in controversy. *See In re McLean Wine Co., Inc.*, 463 B.R. 838 (Bankr. E.D. Mich. 2011) (fee applicant expended $28,000 in an effort to recoup a maximum recovery of $30,000); *Matter of Taxman Clothing Co.*, 49 F.3d 310 (7th Cir. 1995) (attorney sought in excess of $85,000 in compensation in connection with preference claim with maximum value of $33,000); *In re Keene Corp.*, 205 B.R. 690, 702-04 (Bankr. S.D.N.Y. 1997) (among other fee applications under consideration, disallowing all hourly fees (totaling $184,014.50) related to prosecution of claim where maximum recovery was equivalent to "carfare"). In contrast with these hourly fee cases, the contingency fee nature of Plaintiff's compensation assures there is no risk to the estate that Plaintiff's contingency fee will be disproportionate to the outcome in the case.

27. For the foregoing reasons, WDS has failed to demonstrate with plausible well-pleaded facts how the Plan Administrator could be in breach of his fiduciary duties. The Third Counterclaim must therefore be dismissed.

## CONCLUSION

28. For the reasons cited herein and in his Motion, Movant respectfully submits that all Counterclaims against Movant be dismissed with prejudice.

January 9, 2026            **ASK LLP**

By: /s/ *Brigette McGrath*
Brigette McGrath, Esq., NJ SBN 01000-2011
Nicholas C. Brown, Esq., VA SBN 99898
(admitted *pro hac vice*)
2600 Eagan Woods Drive, Suite 400
St. Paul, MN  55121
Telephone: (877) 746-4275
Fax: (651) 406-9676
Email: bmgrath@askllp.com
        nbrown@askllp.com

*-and-*

Edward E. Neiger, Esq.
ASK LLP
60 East 42nd Street, 46th Fl.
New York, New York  10165
Telephone: (212) 267-7342
Fax: (212) 918-3427

*Counsel for the Plan Administrator*