Maha M. Kabbash, Esq. (MK-0163)
TUCKER ELLIS LLP
1776 On the Green
67 E. Park Place, Ste. 500
Morristown, NJ 07960
Telephone: (862) 261-2532

Brian J. Jackiw (admitted *pro hac vice*)
Thomas R. Fawkes (admitted *pro hac vice*)
TUCKER ELLIS LLP
233 South Wacker Drive
Suite 6950
Chicago, Illinois 60606-9997
Telephone: (312) 624-6300

*Counsel to Defendant and Counter-Plaintiff World Distribution Services LLC*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **In re:**<br><br>**BED BATH & BEYOND, INC.,** *et al.*<br><br>    *Debtors.* | **Case No. 23-13359 (VFP)**<br><br>**(Jointly Administered)**<br><br>**Chapter 11** |
| **Michael Goldberg, as Plan Administrator for 20230930-DK-Butterfly-1, Inc. (f/k/a Bed Bath & Beyond,**<br><br>    **Plaintiff and Counter-Defendant,**<br><br>**v.**<br><br>**World Distribution Services LLC**<br><br>    **Defendant and Counter-Plaintiff.** | **Adv. Case No. 24-01367** |

**DEFENDANT WORLD DISTRIBUTION SERVICES LLC'S FIRST AMENDED
ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS TO COMPLAINT
TO AVOID AND RECOVER TRANSFERS PURSUANT TO 11 U.S.C.§§ 547, 548, 549,
AND 550 AND TO DISALLOW CLAIMS PURSUANT TO 11 U.S.C. § 502**

Defendant and Counter-Plaintiff World Distribution Services LLC ("Defendant" or "WDS"), by and through its undersigned counsel, and for its First Amended Answer, Affirmative Defenses, and Counterclaims to Plaintiff and Counter-Defendant Michael Goldberg, as Plan Administrator for 20230930-DK-Butterfly-1, Inc. (f/k/a Bed Bath & Beyond Inc.)'s ("Plaintiff's" or "Plan Administrator's") Complaint to Avoid and Recover Transfers Pursuant to 11 U.S.C.§§ 547, 548, 549, and 550 and to Disallow Claims Pursuant to 11 U.S.C. § 502 (the "Complaint") states as follows:

## NATURE OF THE CASE

1.      Defendant admits that Plaintiff filed the Complaint and seeks to avoid and recover from Defendant all alleged preferential transfers of property pursuant to sections 547 and 550 of the Bankruptcy Code.  Defendant denies the remaining allegations contained in Paragraph 1 given this Court's previous rulings dismissing, with prejudice, causes of action under Sections 548 and 549 of the Bankruptcy Code.

2.      Defendant admits that Plaintiff filed the Complaint and seeks to disallow any claim that Defendant has filed or asserted against Bed Bath & Beyond Inc. and its affiliated debtors (the "Debtors") or that has been scheduled for Defendant.  Defendant denies the remaining allegations contained in Paragraph 2.

## JURISDICTION AND VENUE

3.      Paragraph 3 asserts legal conclusions to which no response is required.  To the extent a response is required, Defendant admits the allegations contained in Paragraph 3.

4.      Paragraph 4 asserts legal conclusions to which no response is required.  To the extent a response is required, Defendant admits the allegations contained in Paragraph 4.

5.      Paragraph 5 asserts legal conclusions to which no response is required.  To the extent a response is required, Defendant admits the allegations contained in Paragraph 5.

6.      Paragraph 6 asserts legal conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations contained in Paragraph 6.

## PROCEDURAL BACKGROUND

7.      Defendant admits the allegations contained in Paragraph 7.

8.      Defendant admits the allegations contained in Paragraph 8.

9.      In response to the allegations asserted in Paragraph 9, Defendant states that the referenced Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc and Its Debtor Affiliates [ECF No. 2160] (the "Plan") speaks for itself, and Defendant denies any interpretation or characterization of the Plan that is inconsistent with the same.  Defendant admits the remaining allegations contained in Paragraph 9.

## THE PARTIES

10.      In response to the allegations asserted in Paragraph 10, Defendant states that the Plan and referenced Findings of Fact, Conclusions of Law, and Order (I) Approving the Disclosure Statement on a Final Basis and (II) Confirming the Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and its Debtor Affiliates [ECF No. 2172] (the "Confirmation Order") speak for themselves, and Defendant denies any interpretation or characterization of the Plan that is inconsistent with the same.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 10 and therefore denies them.

11.      Defendant admits that it was a creditor of the Debtors that provided services to the Debtors.  Further answering, Defendant admits that it is an Ohio limited liability company, and its principal place of business is located at 1340 Depot Street, Cleveland, Ohio 44116. Defendant

admits the remaining allegations contained in Paragraph 11.

## FACTUAL BACKGROUND

12.    Defendant admits that the Debtors used to operate a home goods retail business, but lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 12 and therefore denies them.

13.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 13 and therefore denies them.

14.    In response to the allegations asserted in Paragraph 14, Defendant states that the Plan speaks for itself, and Defendant denies any interpretation or characterization of the Plan that is inconsistent with the same. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 14 and therefore denies them.

15.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 15 and therefore denies them.

16.    Defendant admits the allegations contained in Paragraph 16.

17.    Defendant admits Defendant and one or more of the Debtors entered into certain agreements for the purchase of Defendant's services. Defendant admits that payments made to the Defendant are referenced in Exhibit A to the Complaint.  Defendant admits that Exhibit A contains headings which include Invoice Number, Invoice Date, Invoice Amount, and the Payment Date. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 17 and therefore denies them.

18.    Defendant admits that it received payments from the Debtors but denies that it was property of such Debtors.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 18 and therefore denies them.

19.    Defendant admits that Plaintiff is seeking to avoid certain pre-petition transfers to the Defendant.  Defendant denies the remaining allegations contained in Paragraph 19 and further denies that Plaintiff is entitled to the relief he seeks.

20.    Defendant admits the allegations contained in Paragraph 20.  Defendant notes that Plaintiff omitted the fact that Defendant timely responded to such demand letter, providing proof of complete affirmative defenses to the Plaintiff's asserted claims, and Plaintiff nevertheless filed the Complaint.

21.    Defendant admits that it has a defense in an amount not less than $988,793.32 pursuant to section 547(c)(4) of the Bankruptcy Code.  Defendant denies the remainder of the allegations, specifically the Plaintiff's due diligence allegation. Defendant also denies that the burden of the subsequent new value defense falls on the Defendant when Plaintiff admits and acknowledges such defense.

22.    To the extent the allegations in this paragraph relate to Plaintiff's conclusions or analyses, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 22 and therefore denies them.  Defendant denies the remaining allegations contained in Paragraph 22.

23.    Defendant denies the allegations contained in Paragraph 23.  Further, Defendant states that Plaintiff's so-called reservation of rights is legally ineffective and the statute of limitations set forth in section 546 of the Bankruptcy Code bars Plaintiff from amending the Complaint to raise additional claims or to seek avoidance of additional transfers.

## ANSWER TO CLAIMS FOR RELIEF

### Answer to First Claim for Relief
### (Avoidance of Preference Period Transfers – 11 U.S.C. § 547)

24.     Defendant restates and realleges its responses to all prior and subsequent paragraphs of this Answer as if fully set forth herein.

25.     Defendant admits the allegations contained in Paragraph 25.

26.     Defendant admits that each transfer was made to the Defendants from the Debtors' bank accounts, but lacks sufficient knowledge as to the ownership of such funds and accordingly, the Defendant denies the allegations in Paragraph 26.

27.     Defendant admits that it was a creditor of the Debtors at the time the Debtors transferred payments to Defendant.  Defendant denies the remaining allegations contained in Paragraph 27.

28.     Defendant admits the allegations contained in Paragraph 28.

29.     Defendant admits the allegations contained in Paragraph 29.

30.     Defendant lacks sufficient knowledge regarding the allegations contained in Paragraph 30, and accordingly, denies the same. Defendant admits that section 547(f) of the Bankruptcy Code provides for a rebuttable presumption of insolvency during the preference period.

31.     Defendant denies the allegations contained in paragraph 31.

32.     Defendant denies the allegations contained in paragraph 32.

33.     Defendant denies the allegations contained in Paragraph 33.

**Answer to Second Claim for Relief**
**(Avoidance of Fraudulent Conveyances – 11 U.S.C. § 548(a)(1)(B))**

34.    No response is required because this Claim for Relief has been dismissed with prejudice.

35.    No response is required because this Claim for Relief has been dismissed with prejudice.

36.    No response is required because this Claim for Relief has been dismissed with prejudice.

**Answer to Third Claim for Relief**
**(Avoidance of Unauthorized Post-Petition Transfers – 11 U.S.C. § 549)**

37.    No response is required because this Claim for Relief has been dismissed with prejudice.

38.    No response is required because this Claim for Relief has been dismissed with prejudice.

**Answer to Fourth Claim for Relief**
**(Recovery of Avoided Transfers – 11 U.S.C. § 550)**

39.    Defendant restates and realleges its responses to all prior and subsequent paragraphs of its Answer as if fully set forth herein.

40.    Defendant denies the allegations contained in Paragraph 40.

41.    Defendant denies the allegations contained in Paragraph 41.

42.    Defendant denies the allegations contained in Paragraph 42.

**Answer to Fifth Claim for Relief**
**(Disallowance of all Claims – 11 U.S.C. § 502(d) and (j))**

43.    Defendant restates and realleges its responses to all prior and subsequent paragraphs of its Answer as if fully set forth herein.

44.    Defendant denies the allegations contained in Paragraph 44.

45.    Defendant denies the allegations contained in Paragraph 45.

46.    Defendant denies the allegations contained in Paragraph 46.

47.    Defendant denies the allegations contained in Paragraph 47.

**AFFIRMATIVE DEFENSES**

1.    Plaintiff has failed to state a claim upon which relief can be granted.

2.    Each "Transfer" received by the Defendant was in payment of a debt incurred by the Debtors in the ordinary course of business or financial affairs of the Debtors and the Defendant, and such transfer was made in the ordinary course of business or financial affairs of the Debtors and the Defendant, and is therefore not avoidable pursuant to 11 U.S.C. § 547(c)(2)(A).

3.    Each "Transfer" received by the Defendant was in payment of a debt incurred by the Debtors in the ordinary course of business or financial affairs of the Debtors and the Defendant, and such Transfer was made according to ordinary business terms, and is therefore not avoidable pursuant to 11 U.S.C. § 547(c)(2)(B).

4.    After each "Transfer," Defendant gave new value to or for the benefit of the Debtors that was not secured by an otherwise unavoidable security interest; and on account of which new value the Debtors did not make an otherwise unavoidable transfer to or for the benefit of the Defendant, pursuant to 11 U.S.C. § 547(c)(4).

5.    The Defendant did not receive more than it would have received under Chapter 7, if the transfer had not been made, and Defendant received payment of the debt to the extent provided by the Bankruptcy Code.

6.    Plaintiff has failed to perform adequate due diligence in this matter.  Had the Plaintiff done so, he would have determined that Defendant had affirmative defenses, including

defenses pursuant to 11 U.S.C. §§ 547(c)(2)(A), (c)(2)(B, and 547(c)(4).  Further, the Plaintiff failed to take into account the Ordinary Course Acknowledgement (defined below), which constitutes a complete affirmative defense to the Plaintiff's remaining Claims for Relief.

7.      The Plaintiff is equitably estopped from prosecuting those Claims for Relief that were not previously dismissed with prejudice by the Court, in light of the Ordinary Course Admission.  Even if it is determined that the Ordinary Course Admission should have been approved by the Court, the burden of seeking and obtaining such approval rested entirely on the Debtors, and the Defendant reasonably relied, to its detriment, on the Debtors' representation (made by its general counsel and its sophisticated outside bankruptcy counsel) that Court approval of the Ordinary Course Admission was not required.  The Defendant honored, in its entirety, the Agreement between the Defendant and the Debtors which gave rise to the Ordinary Course Admission, providing, *inter alia*, over $20 million of goods to the Debtors in consideration for the Ordinary Course Admission, and providing additional consideration to the estates, including its substantial pre-petition claim.

8.      The Post-Petition Agreement is a valid, enforceable contract which the Plan Administrator must honor.  It is an agreement entered into in the ordinary course of business between WDS and the Debtors, or was otherwise authorized by orders entered in the Debtors' chapter 11 cases, and therefore did not require Court approval pursuant to Bankruptcy Rule 9019.

9.      Moreover, even if the Court determined that the Agreement was not an ordinary course of business transaction, this Court would have approved it had the Debtors sought Court approval.  There are multiple justifications in the record for this conclusion:  (i) first, there is no reasonable dispute that substantial benefits were received by the Debtors and their estates resulting from the Agreement – namely, the more than $20 million in product that WDS delivered

thereunder – which far exceeded the value of any avoidance claim against WDS, and which, coupled with the waivers and releases provided by WDS, would have justified approval under the standards imposed in this Circuit for approval of settlements under Fed. R. Bankr. P. 9019; (ii) second,  the Agreement (and specifically the Ordinary Course Acknowledgement, to the extent it is deemed a waiver of any preference claims against WDS) was permitted under the *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Granding Adequate Protection, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* (the "Final Cash Collateral Order") [ECF No 729, pg. 56, ¶25], which authorized the Debtors to dispose of collateral having a value less than $250,000 without Court approval or consent of the Required DIP Lenders, the Required FILO Lenders, and the Prepetition Administrative Agent (all as defined in the Final Cash Collateral Order);[1] and (iii) third, under the *Final Order (I) Authorizing the Debtors to Pay Certain Prepetition Secured Claims of Critical Lien Claimants, (II) Confirming Administrative Expense Priority of Critical Outstanding Order, and (III) Granting Related Relief* (the "Final Critical Lien Order")[ECF No. 588], which authorized the Debtors to "honor, pay, or otherwise satisfy" critical lien claims and "to take all reasonable actions necessary to effectuate the relief granted" therein.  WDS further notes that based on its review of the docket, the Court did not deny a single motion filed by the Debtors for the entirety of the chapter 11 cases.

10.    The Agreement satisfies the elements commonly utilized by courts in this Court to evaluate a proposed settlement under Fed. R. Bankr. P. 9019:  (1) WDS does not have liability to

---

[1] As the Debtors agreed to the Ordinary Course Acknowledgement, it can be inferred that it reached the conclusion that the value of a preference claim for which there is a complete affirmative defense is less than $250,000.

the estates because the transfers at issue were acknowledged as being in the ordinary course of business (and therefore, the Debtors were unlikely to prevail on the merits); (2) the expense of litigation on a preference action of this magnitude, as well as the likely duration of the litigation can be substantial, and is inherently fact-intensive; (3) collection difficulties should be considered neutral as no allegation has been made that WDS is uncollectible; and (4) the paramount interests of creditors were served, due to the substantial value received by the estates (specifically, over $20 million of goods and the Waived Prepetition Claim (defined below)), which substantially outweighed any speculative value resulting from the continued prosecution of a preference claim against WDS.

11.    WDS is entitled to setoff.  If, as the Plan Administrator claims, the Agreement is non-enforceable, then WDS is entitled to allowance and payment of the Waived Prepetition Claim (defined below), which would have been paid in full pursuant to the Critical Lien Orders (defined below) and the Debtor's statements.  Accordingly, to the extent WDS is determined to have any liability for the allegedly preferential transfers, that liability would be offset on a dollar for dollar basis against the Waived Prepetition Claim and the Plan Administrator would owe WDS the difference.

WHEREFORE, World Distribution Services LLC respectfully requests judgment in its favor as follows:

a.   Dismissal of Plaintiff's Complaint with prejudice;

b.   Defendant's attorneys' fees and costs as allowable by law; and

c.   For such other and further relief as this Court may deem just and appropriate.

## COUNTERCLAIMS

WDS, for its Counterclaims against Plaintiff/Counterclaim Defendant Michael Goldberg, as Plan Administrator for 20230930-DK-Butterfly-1, Inc. (f/k/a Bed Bath & Beyond Inc.) (the "Plan Administrator") states as follows:

1.      For purposes of this Counterclaim against the Plan Administrator, WDS reasserts all of its admissions, denials, and other responses in its Answer and Affirmative Defenses to the Plan Administrator's Complaint as if fully restated herein.

## FACTUAL BACKGROUND

2.      On May 17, 2024, the Plan Administrator filed the above-captioned Complaint (Dkt. No. 1) against WDS, seeking avoidance and recovery of $3,213,155.75 of transfers made by one or more Debtors to WDS, and seeking related relief, pursuant to sections 547, 548, 549, and 550 of the Bankruptcy Code.

3.      Prior to and following the Petition Date, WDS provided logistics and warehousing services for the Debtors.  At the time of the Petition Date, WDS had upwards of $20 million of goods destined for the Debtors in its possession (the "Warehoused Goods").  WDS also had a claim in excess of $2 million for services rendered to the Debtors, but not paid for, prior to the Petition Date.

4.      On April 26, 2023, the Debtors contacted WDS to inform it that the Debtors declared WDS a critical lien claimant, entitled to payment under the Debtor's Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Pay Certain Prepetition Secured Claims of Critical Lien Claimants, (II) Confirming Administrative Expense Priority of Critical Outstanding Orders, and (III) Granting Related Relief (the "Critical Lien Motion")[ECF No. 22] and corresponding interim and final orders approving the same (the "Critical Lien Orders")[ECF

-12-

Nos. 97 and 588]. Furthermore, the Debtors represented in writing to WDS that they would be paying all amounts owed to WDS pre-Petition Date and requested that WDS "resume operations immediately."

5. Two days later, on April 28, 2023, the Debtors made a payment to WDS in the amount of $301,688.96, representing certain pre-Petition Date amounts due to WDS.

6. Thereafter, the Debtors and their counsel, and WDS and its counsel, commenced negotiations with respect to WDS providing post-petition services to the Debtors, including the delivery of the Warehoused Goods. Counsel for the Debtors, Kirkland & Ellis LLP ("K&E"), counsel for WDS and the Debtors' Executive Vice President and General Counsel, David Kasten, were present for at least three telephone conferences and multiple e-mail communications regarding the provision of post-Petition Date services, including the delivery of the Warehoused Goods.

7. As a result of these negotiations, on May 3, 2023, WDS and the Debtors entered into an agreement for post-Petition Date services, which included the following language:

> Pursuant to our discussion today, we propose the following terms for a post-petition agreement (the "Agreement") between the Debtors, as defined in jointly administered Case No. 23-13359, In re Bed Bath & Beyond Inc. et al (the "Debtors") and World Distribution Services ("WDS"):

> 1. The Debtors shall pay WDS $3 million, to be received by WDS no later than close of business, May 5, 2023 as payment for post-petition services of storage, handling, and shipment of all of the goods (the "Goods") stored by the Debtors with WDS. Payment shall be made by wire.
> 2. WDS agrees to waive its prepetition claim.
> 3. Debtors shall provide to WDS all Federal Express shipping routes.
> 4. Debtors agree and acknowledge that all pre-petition payments made by Debtors to WDS were made in payment of a debt incurred by the Debtors in the ordinary course of business of the Debtors and WDS and

-13-

such payment was made in the ordinary course of business of the debtor and WDS.

5. Debtors agree and acknowledge that this agreement is reasonable, justified, and in the best interests of the bankruptcy estates and creditors of the Debtors.

6. Debtors are authorized to enter into this Agreement without Court approval.

7. WDS is authorized to enter into this Agreement.

8. Debtors are required to take all Goods currently held by WDS by June 30, 2023.

9. If all of the Goods are not taken by the Debtors by June 30, 2023, Debtors shall immediately pay WDS an additional $500,000 and WDS may destroy or discard the Goods as it sees fit.

10. WDS agrees to the terms and provisions of the *Interim Order (I) Authorizing the Debtors to Pay Certain Prepetition Secured Claims of Critical Lien Claimants, (II) Confirming Administrative Expense Priority of Critical Outstanding Orders, and (III) Granting Related Relief* [Docket No. 97] (the "Interim Order") to the extent such Interim Order applies to this Agreement.

Please confirm by reply to this message that the Debtors agree, acknowledge, and concur with the above terms, statements, and the Agreement in whole.

*See Exhibits E* and *F to Adv. ECF. No. 12* (the "Agreement").

8.     One of the provisions of the Agreement was that "Debtors agree and acknowledge that all pre-petition payments made by Debtors to WDS were made in payment of a debt incurred by the Debtors in the ordinary course of business of the Debtors and WDS and such payment was made in the ordinary course of business of the debtor and WDS" (the "Ordinary Course Admission"). This was a material provision of the Agreement and a condition to WDS agreeing to (i) ship the Goods to the Debtors and (ii) waive its prepetition claim.

9.     In the absence of the Debtors' agreement to make the Ordinary Course Admission, WDS would not have entered into the Agreement.

10.     Another provision of the Agreement was that WDS waive its prepetition claim.

WDS's prepetition claim amount was $2,041,142.03 (the "Waived Prepetition Claim"), which was comprised of unpaid invoices dating from December 2022 until the Petition Date.  Absent WDS's waiver, WDS would have been entitled to additional payment on account of the Waived Prepetition Claim, subject to the terms and conditions of the Critical Lien Orders.

11.     David Kastin, Executive Vice President and General Counsel of the Debtors, agreed to the Agreement in an e-mail dated May 4, 2023 in which he wrote "Confirmed."  Counsel for the Debtors, Olivia Acuna of Kirkland & Ellis, consented to the Agreement by e-mail dated May 3, 2023, in which she stated: "We are signed off on the below language."

12.     The Agreement is a valid and legally enforceable contract.

13.     The Debtors wired the post-petition payment and took all goods before June 30, 2023, as required by the Agreement.

14.     WDS fully complied with all of its obligations under the Agreement, including the delivery of the Goods to the Debtors.

15.     The Agreement contains the Debtors' express acknowledgment that pre-Petition Date transfers made by them to WDS were made in the ordinary course of business, and therefore, constituted an acknowledgment of a complete affirmative defense by WDS pursuant to section 547(c)(2) of the Bankruptcy Code.

16.     WDS reasonably relied upon the expertise and case-specific knowledge of K&E and Mr. Kasten in their determination that the Agreement did not require Court approval.

17.     On September 14, 2023, this Court entered its *Findings of Fact, Conclusions of Law, and Order (I) Approving the Disclosure Statement on a Final Basis And (II) Confirming the Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Ind. and its Debtor Affiliates* (the "Confirmation Order").

18.     On September 29, 2023, and in accordance with the Plan, the effective date of the Plan occurred and the Plan Administrator became the sole representative of the Wind-Down Debtors. ECF No. 2172; Adv. ECF No. 16 (Plan Administrator's Reply to Motion for Summary Judgment, pg. 6).

19.     The Debtor filed with the Court a Plan Supplement including that certain Plan Administrator Agreement by and between the Debtors and the Plan Administrator [ECF No. 2133] designating the Plan Administrator as the exclusive representative of the Wind-Down Debtors, and illustrating that the Plan Administrator stands in the shoes of the Debtors [ECF No. 2133, Ex. B, §2.1] (also noted by this Court during oral arguments on WDS's motion for summary judgment). Under the Plan Administrator Agreement, the Plan Administrator is accordingly subject to, and should be deemed to have made and agreed to, the Agreement and the Ordinary Course Admission.

20.     Prior to the Plan Administrator filing the Complaint, the Plan Administrator sent WDS a letter, dated November 15, 2023, demanding turnover of the subject Transfers.

21.     On November 28, 2023, WDS sent responsive correspondence to the Plan Administrator, informing him of: (1) liens which WDS had on the Debtors' inventory; (2) WDS's designation as a Critical Lien Vendor; and (3) the Agreement and Ordinary Course Admission.  In light of the Ordinary Course Admission, which is binding on the Plan Administrator, WDS also requested that the Plan Administrator cease pursuit of such claims.

22.     More than five months later, May 13, 2024, the Plan Administrator substantively responded to WDS's November 28, 2023 correspondence.  This correspondence acknowledged the Agreement entered into between the Debtor and WDS; however, the Plan Administrator refused to cease pursuit of avoidance claims against WDS.

23.     In breach of the Agreement and the Ordinary Course Admission, the Plan Administrator filed his Complaint on May 17, 2024 (the "Complaint)[Adv. Dkt. No. 1], seeking avoidance and turnover of $3,213,155.75[2] – despite being informed of: (1) WDS's complete affirmative defenses to such claims; (2) WDS's designation as a Critical Lien Claimant and the Court's authorization for the Debtors to make post-petition payments thereupon in the Critical Lien Order; and (3) the fact that all transactions between WDS and the Debtors were performed for value, and payments made on account of antecedent debt.

## COUNTERCLAIM I
### Breach of Contract

24.     WDS repeats, realleges, and incorporates all allegations contained in all previous paragraphs of the Counterclaims as if fully set forth herein.

25.     The Debtor and Defendant entered into the Agreement on May 4, 2023.

26.     The Agreement is a valid, legally enforceable contract.

27.     A material term of the Agreement was the Ordinary Course Admission, which was voluntarily entered into by the Debtors, upon consultation with its highly experienced bankruptcy counsel and its General Counsel.

28.     Absent the Ordinary Course Admission, WDS would not have entered into the Agreement.

29.     Another material term of the Agreement was the affirmative statement that the Debtors did not need Court approval to enter into the Agreement (the "Consent Admission").

---

[2] The Transfers which the Plan Administrator seeks to avoid and recover constitute $2,911,466.79 in pre-petition allegedly preferential transfers and $301,688.96 in a post-petition transfer (the latter made as a payment pursuant to the Critical Lien Order).

30.    WDS reasonably relied upon the Consent Admission, which the Debtors made through their experienced outside bankruptcy counsel and their General Counsel.

31.    Even if this Court determines that the Agreement required approval upon notice to entitled parties, this Court would have approved it, as the Ordinary Course Acknowledgment (i) was part of an overall transaction that provided substantial net benefits to the Debtors (including the delivery of over $20 million of product and the Waived Prepetition Claim), and therefore would have been found to be in the best interests of the estates and creditors; (ii) constituted a disposition of collateral of less than $250,000 of value (as permitted by the Final Cash Collateral Order), which could be effectuated without Court approval; and (iii) was consistent with the broad grant of authority given to the Debtors under the Final Critical Lien Order.

32.    WDS's entry into the Agreement, and its performance of its obligations thereunder, provided substantial value to the Debtors, their estates and creditors.

33.    The Plan Administrator, as the sole remaining representative of the Debtors, is bound by the contracts that the Debtors entered into prior to his appointment, including the Agreement.

34.    The Ordinary Course admission constitutes a complete affirmative defense to any preference claims held by the estates pursuant to section 547(c)(2)(A) of the Bankruptcy Code.

35.    By filing the Complaint, and by refusing to dismiss his cause of action to avoid and recover allegedly preferential transfers to WDS notwithstanding the enforceable Ordinary Course Acknowledgement, the Plan Administrator has breached – and continues to be in breach – of the Agreement.

36.    The appropriate measure of damages to WDS for the Plan Administrator's breach of the Agreement includes, but is not limited, to:  (i) any damages ultimately awarded in the Plan

-18-

Administrator's favor on his First, Fourth, and Fifth Claims for Relief of the Complaint; and (ii) all attorneys' fees and costs incurred by WDS in the defense of such Claims for Relief.

WHEREFORE, the Defendant requests entry of a judgment:

A.  Finding that the Plan Administrator has breached the Agreement;

B.  Awarding damages in the amount of all attorneys' fees and costs incurred by WDS in its defense of this adversary proceeding;

C.  Awarding damages in the amount of any judgment against WDS obtained by the Plan Administrator on the First, Fourth, and Fifth Claims for Relief asserted by him;

D.  Reinstating WDS's Waived Prepetition Claim;

E.  For payment in the amount of $2,041,142.03, representing the Waived Prepetition Claim, pursuant to the Critical Lien Orders, which authorized the Debtors to pay the pre-petition claims of Critical Lien Claimants; and

F.  For such other and further relief that this Court deems just and proper.

### COUNTERCLAIM II
### Fraudulent Inducement

37.     WDS repeats, realleges, and incorporates all allegations contained in all previous paragraphs of the Counterclaims as if fully set forth herein.

38.     Pursuant to the Plan Administrator Agreement, the Plan Administrator is the sole representative of the Debtors, and all agreements entered into, and admissions and representations made by, the Debtors prior to his appointment are binding in all respects on him.

39.     The Debtors entered into the Agreement, which contained, among other things, the Ordinary Course Admission, as well as Consent Admission.

40.     WDS reasonably relied upon the Ordinary Course Admission and the Consent Admission in entering into the Agreement, based upon the fact that the Agreement was negotiated

by the Debtors' sophisticated bankruptcy counsel and senior management[3], who possessed superior knowledge concerning the posture of the chapter 11 cases and the totality of the orders that had been or would be entered in the bankruptcy cases.

41.     The Plan Administrator has now taken the position – years after the fact, and following WDS's complete discharge of its obligations under the Agreement – that the Agreement is not enforceable against the Plan Administrator because, *inter alia*, the Debtors lacked authority to enter into it.

42.     As this position directly contradicts representations made by the Debtors – the very parties whom the Plan Administrator represents – the Plan Administrator should be held responsible for such contradictory position and the substantial damage it has caused WDS.

43.     While there is no evidence in the record that the Debtors, at the time they entered into the Agreement, did not believe in the veracity of the Ordinary Course Admission or the Consent Admission, the Plan Administrator's now directly contrary position must be imputed to the Debtors.

44.     Since the Plan Administrator is the sole representative of the Debtors, his taking of a position directly contrary to that of the very parties he represents should be deemed to constitute a fraudulent misrepresentation intended to induce WDS to enter into the Agreement, supply the Goods, and waive the Waived Prepetition Claim.

45.     As a result of the Plan Administrator's fraudulent conduct, WDS has suffered substantial and continuing damages, including attorneys' fees, costs, the waiver of its Waived Prepetition Claim that may have been entitled to a one hundred percent (100%) distribution under

---

[3] Indeed, Mr. Kastin, who negotiated the Ordinary Course Admission, assisted the Plan Administrator in negotiating many settlements of preference actions during mediations the Plan Administrator held with various preference defendants.

the Critical Lien Orders, as well as the risk of an adverse judgment on the First, Fourth, and Fifth

Causes of Action.

WHEREFORE, the Defendant requests entry of a judgment:

A. Finding that the Plan Administrator has committed fraudulent inducement;

B. Awarding damages in the amount of all attorneys' fees and costs incurred by WDS in
its defense of this adversary proceeding;

C. Awarding damages in the amount of any judgment against WDS obtained by the Plan
Administrator on the First, Fourth, and Fifth Claims for Relief asserted by him;

D. Reinstating the Waived Prepetition Claim;

E. For payment in the amount of $2,041,142.03, representing the Waived Prepetition
Claim, pursuant to the Critical Lien Orders, which authorized the Debtors to pay the
pre-petition claims of Critical Lien Claimants; and

F. For such other and further relief that this Court deems just and proper.

## COUNTERCLAIM III
### Breach of Fiduciary Duty

46.     WDS repeats, realleges, and incorporates all allegations contained in all previous

paragraphs of the Counterclaims as if fully set forth herein.

47.     Pursuant to the Plan Administrator Agreement, the Plan Administrator expressly

assumed all rights, duties, and powers of a trustee in bankruptcy.

48.     It is axiomatic that a trustee in bankruptcy has fiduciary duties, including the duty

of loyalty, to the bankruptcy estate and creditors, including WDS.

49.     The Plan Administrator Agreement, at section 2.13, sets forth the compensation to

which the Plan Administrator is entitled.  Among other things, the Plan Administrator is entitled

to a success fee depending on how much money he is successful in distributing to the DIP/FILO

Lenders, who have an interest under the confirmed Plan in the estates' avoidance action claims, including those against WDS.

50.    Further, upon information and belief, the Plan Administrator's counsel is prosecuting this action on a contingency fee basis, with its compensation therefore based on the amounts it is able to recover from WDS.

51.    Accordingly, both the Plan Administrator and his counsel have a direct pecuniary interest in the outcome of this litigation and stand to receive compensation in the event of an outcome in which WDS is required to turn over some or all of the allegedly preferential transfers.

52.    In light of the pecuniary interests that both the Plan Administrator and his counsel have in the outcome of this litigation, the Plan Administrator has taken the position that the Ordinary Course Acknowledgement – despite being agreed to by the Debtors on the advice of their sophisticated bankruptcy counsel – does not bind him, thereby permitting him (in his view) to prosecute claims against WDS.

53.    The Plan Administrator has therefore placed his own self-interest above the interests of the estates and creditors, including in the honoring of contracts voluntarily entered into by the parties he represents which provided substantial value to the estates.

54.    Absent the Plan Administrator's breach, the above-captioned litigation should never have been filed and accordingly, has caused WDS substantial and continuing damages.

WHEREFORE, the Defendant requests entry of a judgment:

A. Finding that the Plan Administrator has breached his fiduciary duties owed to the Wind-Down Debtors, their estates, and WDS;

B. Awarding damages in the amount of all attorneys' fees and costs incurred by WDS in its defense of this adversary proceeding;

-22-

C.  Awarding damages in the amount of any judgment against WDS obtained by the Plan

Administrator on the First, Fourth, and Fifth Claims for Relief asserted by him;

D.  Reinstating the Waived Prepetition Claim;

E.  For payment in the amount of $2,041,142.03, representing the Waived Prepetition

Claim, pursuant to the Critical Lien Orders, which authorized the Debtors to pay the

pre-petition claims of Critical Lien Claimants; and

F.  For such other and further relief that this Court deems just and proper.

### COUNTERCLAIM IV
### Unjust Enrichment

55.     WDS repeats, realleges, and incorporates all allegations contained in all previous paragraphs of the Counterclaims as if fully set forth herein, except those allegations as to the formation and enforceability of a contract.

56.     This Counterclaim is brought in the alternative to Counterclaim I, in the event that this Court finds that a valid, enforceable contract did not exist between the Debtors and WDS.

57.     By delivering, pursuant to the Debtors' instructions, over $20 million of goods post-petition, and by waiving the Waived Prepetition Claim (which would have been paid in full under the Critical Lien Order), WDS has conferred a benefit upon the Debtors and their estates.

58.     Such benefit can be imputed to the Plan Administrator, given that he is now the exclusive representative of the Debtors and their estates.

59.     The Debtors had knowledge and appreciation of the benefit conferred by WDS, and accepted and retained the benefit of over $20 million of goods and the Waived Prepetition Claim.

60.     The Debtors, and consequently the Plan Administrator, have been or will be unjustly enriched in an amount of not less than: (1) any amount this Court finds WDS liable for under Count I of the Complaint; and (2) the cash value of the Waived Prepetition Claim.

61.    Under Third Circuit precedent, in the event that the Court will not enforce the Agreement against the Plan Administrator, WDS is entitled to restitution in, at a minimum, the foregoing amounts.

WHEREFORE, the Defendant requests entry of a judgment:

A.  Awarding WDS damages, as an administrative expense, in an amount not less than (i) the amount of any judgment entered in the Plan Administrator's favor on Count I of the Complaint; plus (ii) $2,041,142.03 (the amount of the Waived Prepetition Claim); plus (iii) pre- and post-judgment interest at the maximum rate permitted by law, and attorneys' fees and costs; and

B.  For such other and further relief that this Court deems just and proper.


Dated:  January 27, 2026                    Respectfully submitted,

                                            TUCKER ELLIS LLP


                                            *s/ Maha M. Kabbash*_____
                                            Maha M. Kabbash, Esq.
                                            67 E. Park Place, Suite 500
                                            Morristown, NJ 07960
                                            Direct: 862-261-2532
                                            Fax: 862-261-2551
                                            brian.jackiw@tuckerellis.com

                                            Brian J. Jackiw, Esq. (admitted *pro hac vice*, IL
                                            Atty No. 6296807)
                                            233 South Wacker Drive, Suite 6950
                                            Chicago, IL  60606
                                            Direct: 312-256-9426
                                            Fax: 312-624-6309
                                            brian.jackiw@tuckerellis.com

                                            *Attorneys for World Distribution Services LLC*

## CERTIFICATE OF SERVICE

I hereby certify that, on January 27, 2026, a true and correct copy of Answer, Affirmative Defenses and Counterclaims of World Distribution Services LLC was electronically filed and was served via electronic mail upon counsel of record in this proceeding.


Dated: January 27, 2026                    *s/ Maha M. Kabbash*_____
                                           Maha M. Kabbash, Esq.

                                           *Attorney for World Distribution Services LLC*

-25-

7219856.1