| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY**<br>**Caption in Compliance with D.N.J. LBR 9004-1(b)**<br>Marianna Udem<br>Brigette McGrath<br>Nicholas C. Brown<br>ASK LLP<br>60 East 42nd Street, 46th Floor<br>New York, NY 10165<br>Telephone: (212) 267-7342<br>Facsimile: (212) 918-3427<br>mudem@askllp.com<br>bmcgrath@askllp.com<br>nbrown@askllp.com<br><br>*Special Counsel to the Plan Administrator* | |
| In re:<br><br>BED BATH & BEYOND, INC., *et al.*,[1]<br><br>      Debtor. | Chapter 11<br><br>Case No. 23-13359 (VFP)<br><br>(Jointly Administered) |
| Michael Goldberg, as Plan Administrator for 20230930-DK-Butterfly-1, Inc. (f/k/a/ Bed Bath & Beyond Inc.),[2]<br>      Plaintiff,<br><br>v.<br><br>World Distribution Services LLC,<br>      Defendant. | Adv. No. 24-01367 (VFP) |

**STATEMENT IN OPPOSITION TO WORLD DISTRIBUTION SERVICES LLC'S AMENDMENT OF ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby. The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 650 Liberty Avenue, Union, New Jersey 07083.

[2] Pursuant to the *Certificate of Amendment of the Certificate of Incorporation of Bed Bath & Beyond Inc.*, which was filed with the State of New York Department of State on September 21, 2023, the name of the entity formerly known as "Bed Bath & Beyond Inc." was changed to *20230930-DK-Butterfly, Inc.* [Filing ID No. 230921001833 DOS ID 315602].

1

Michael Goldberg, as Plan Administrator (the "Movant" or "Plan Administrator") for 20230930-DK-Butterfly-1, Inc. (f/k/a/ Bed Bath & Beyond Inc.) and its affiliated debtors (each, a "Debtor" and collectively, the "Wind-Down Debtors" or "Debtors") in the above-captioned case, hereby files this *Statement in Opposition to World Distribution Services LLC's Amendment of Answer, Affirmative Defenses, and Counterclaims* (the "Statement"). In support hereof, Movant shows as follows:

**PROCEDURAL POSTURE**

1. On November 6, 2025, defendant World Distribution Services LLC ("WDS" or "Defendant" and, together with the Plan Administrator, the "Parties") filed its *Answer, Affirmative Defenses, and Counterclaims* in the above-captioned adversary proceeding.

2. On November 26, 2025, the Plan Administrator filed the *Motion to Dismiss all Counterclaims of World Distribution Services LLC* (the "Motion to Dismiss").

3. On January 6, 2026, WDS filed a response in opposition to the Motion to Dismiss.

4. On January 9, 2026, the Plan Administrator filed a reply (the "Reply") in support of the Motion to Dismiss.

5. On January 13, 2026, the Court conducted a hearing on the Motion to Dismiss. At hearing, the Court highlighted potential issues with WDS' counterclaims based on the arguments raised in the Motion to Dismiss and Reply. The Court allowed WDS an opportunity to amend its counterclaims, and to submit a statement in support of amendment, and further providing the Plan Administrator with the opportunity to file a responsive statement, to be followed by a subsequent hearing on the Motion to Dismiss. On January 27, 2026, the Court entered a scheduling order to this effect [Adv. Docket No. 38].

6. On January 27, 2026, WDS filed the *Amendment to Answer, Affirmative Defenses,*

*and Counterclaims* (the "Amendment") and statement in support of amendment [Adv. Docket Nos. 39, 40].

7. By this Statement, the Plan Administrator responds to the new allegations in the Amendment and WDS' supporting statement, and the comments made by the Court at the initial hearing, in further support of the Motion to Dismiss.

## THE AMENDMENT

8. The Plan Administrator has compared the original answer to the Amendment and has identified the following material new allegations by WDS (in paraphrased format):

   i. New Affirmative Defenses Nos. 8 – 11

   - The post-petition agreement (the "Agreement") is a valid enforceable contract which did not require court approval.

   - If the post-petition agreement did require court approval, the Court would have approved it.

   - The post-petition agreement satisfied the elements for court approval of settlements under Bankruptcy Rule 9019.

   - WDS is entitled to setoff.

   ii. New Allegations in Support of Breach of Contract Counterclaim

   - The Agreement is a valid and legally enforceable contract. Amendment ¶¶ 12, 26.

   - WDS reasonably relied on the Consent Admission, which the Debtors made through their experienced outside bankruptcy counsel and their General Counsel. Amendment ¶ 30.

   - Even if the Agreement did require notice and court approval, this Court would

3

      have approved it because the Ordinary Course Acknowledgement (i) was part of an overall transaction that provided substantial net benefits to the Debtors and was therefore in the best interests of the estate and creditors, (ii) constituted a disposition of collateral less than $250,000 in value which could be effectuated without Court approval, and (iii) was consistent with the broad grant of authority given to the Debtors under the Final Critical Lien Order.  Amendment ¶ 31.

iii. <u>New Allegations in Support of Fraudulent Inducement Counterclaim</u>

- WDS reasonably relied upon the expertise and case-specific knowledge of Debtors' counsel and General Counsel in their determination that the Agreement did not require court approval.  Amendment ¶ 16.

- The Debtors' counsel and General Counsel "possessed superior knowledge concerning the posture of the chapter 11 cases and the totality of the orders that had been or would be entered in the bankruptcy cases."  Amendment ¶ 40.

- The Debtors' General Counsel, who negotiated the Agreement, assisted the Plan Administrator in negotiating many settlements of preference actions during mediations the Plan Administrator held with various preference defendants.  Amendment fn. 3.

iv. <u>New Allegations in Support of Breach of Fiduciary Duty Counterclaim</u>

- None.

v. <u>New Counterclaim for Unjust Enrichment</u>

- Asserted in the alternative to the breach of contract counterclaim in the event the Court finds that the Agreement is not enforceable.

- Seeks damages in the sum of (i) the amount the Court finds WDS liable under the

4

Plan Administrator's preference claim and (ii) the cash value of WDS' waived prepetition claim.

## SUMMARY OF ARGUMENT

9. The Amendment does not fix the fatal flaws inherent in WDS' original counterclaims. The Breach of Contract Counterclaim is reliant on *nunc pro tunc* enforcement for which WDS is not permitted as a matter of law. The Fraudulent Inducement Counterclaim continues to be dependent on the false premise that a party represented by seasoned bankruptcy counsel could have reasonably relied on a legal representation made by the opposing party's attorneys. WDS has made no changes to the Breach of Fiduciary Counterclaim which continues to be deficient. And the new Unjust Enrichment Counterclaim fails for the same reasons as the Breach of Contract and Fraudulent Inducement Counterclaims. For the reasons stated herein and in the Plan Administrator's briefs in support of the Motion to Dismiss, which arguments are incorporated by reference herein, the Motion to Dismiss should be granted as to each of WDS' counterclaims.[3]

## ARGUMENT

A. **The Amended Breach of Contract Counterclaim is Implausible as a Matter of Law.**

　　i. Allegations That The Agreement Did Not Require Notice or Court Approval Are Not Plausible.

10. As an initial matter, the Agreement is not an enforceable contract because it required notice and court approval under 11 U.S.C. § 363(b). An unenforceable contract cannot be the subject of a breach of contract claim. *In re Roth American*, 975 F.2d 949 (3rd Cir. 1992). Parties to a post-petition, pre-confirmation contract cannot simply contract themselves out of this

---

[3] This Statement addresses WDS' counterclaims which are the subject of the Motion to Dismiss. In its Amendment, WDS also raised four new affirmative defenses. The Plan Administrator is skeptical of the propriety of these affirmative defenses and reserves the right to seek to strike such defenses following the disposition of the Motion to Dismiss.

5

statutory notice and court approval requirement by simply agreeing that no court approval is necessary. Nor could WDS have reasonably relied on a statement by the Debtors that no court approval was required because WDS was represented by able bankruptcy counsel who is charged with knowledge of the basic bankruptcy law principles of notice and court approval.

11. This Court has already rejected WDS' position, during the early summary judgment phase of this proceeding, that the Agreement, and in particular the preference claim waiver, did not require notice and court approval. *See Order Denying in Part Defendant's Motion for Summary Judgment* [Adv. Docket No. 30]. However, WDS now alleges in its Amendment that the DIP Order and/or Critical Lien Order somehow obviated the need for notice and court approval. These arguments fell flat at the summary judgment hearing and continue to lack force or effect. The DIP Order does not help WDS because there is no evidence, nor has WDS even alleged, that the DIP creditors approved a release of the preference claim against WDS, which approval was a condition to disposition of this estate cause of action.[4] Similarly, the Critical Lien Order did not grant authority to the Debtors to waive chapter 5 claims against critical lien claimants without notice or court approval.

    ii. *Nunc Pro Tunc* Approval is an Extraordinary Remedy and Defendant Has Failed to Adequately Plead Entitlement to Such Relief.

12. The Supreme Court is wary of granting retroactive relief especially when sought due to factors beyond any inadvertence of the court. A *nunc pro tunc* order is one that "presupposes a decree allowed, or ordered, but not entered, through inadvertence of the court."

---

[4] The DIP Order requires DIP lender approval to dispose of any collateral valued at more than $250,000. The Plan Administrator does not read the DIP Order as authorizing the disposal of collateral worth less than $250,000 without court approval; however, this issue is of no moment because the preference claim has a face amount of $2.9 million. Even after crediting new value, WDS' exposure on the preference claim is approximately $2 million. *See Declaration of Michael I. Goldberg as Plan Administrator* [Adv. Docket No. 16-2].

6

*Cuebas y Arredondo v. Cuebas y Arrendondo*, 223 U.S. 376, 390, 32 S.Ct. 277, 56 L.Ed. 476 (1912). However, "*[n]unc pro tunc* orders are not some Orwellian vehicle for revisionist history – creating 'facts' that never occurred in fact." *Roman Catholic Archdiocese of San Juan, Puerto Rico v. Acevedo Feliciano*, 589 U.S. 57, 65, 140 S.Ct. 696, 206 L.Ed.2d 1 (2020) (quoting *United States v. Gillespie*, 666 F. Supp. 1137, 1139 (N.D. Ill. 1987)). That is, "the court 'cannot make the record what it is not.'" *Id.* (quoting *Missouri v. Jenkins*, 495 U.S. 33, 49, 110 S.Ct. 1651, 109 L.Ed.2d 31 (1990)).

13. Moreover, section 105(a) "does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code." *In re Nilhan Developers, LLC*, 620 B.R. 385, 403 (Bankr. N.D. Ga. 2020) (citing *Law v. Siegel*, 571 U.S. 415, 421, 134 S.Ct. 1188, 188 L.Ed.2d 146 (2014)). Thus, "[s]ection 105(a) cannot be used to carry out actions the Code prohibits." *Id.* at 405-06 (declining to approve post-petition financing *nunc pro tunc*). Where a bankruptcy statute expressly provides a procedure (here, giving notice and obtaining court approval in order to use estate property outside the ordinary course of business), section 105(a) cannot be used to override these specific protocols. *Id.* at 406.

14. The holdings in *Acevedo* and *Law* are instructive here. The lack of an order approving a preference claim waiver was not due to this Court's inadvertence; rather, the Court had no awareness of the claim waiver because neither the Debtors nor WDS gave notice or sought this Court's approval for such waiver. Such a motion was necessary under 11 U.S.C. 363(b) and Bankruptcy Rule 9019. WDS should not be allowed to recreate facts, for example, that notice was provided to necessary creditors as required by statute, or to presume no objections would be lodged or that DIP lender support would be granted, or otherwise rewrite history and circumvent section 363(b) through *nunc pro tunc* relief.

7

15. Even if WDS were eligible to pursue retroactive relief despite the holdings in *Acevedo* and *Law*, *nunc pro tunc* approval of a disposition of estate property outside the ordinary course is an extraordinary remedy that is rarely granted. *See Matter of Arkansas Co., Inc.*, 798 F.2d 645 (3rd Cir. 1986) ("We thus hold that *nunc pro tunc* approval should be limited to cases where extraordinary circumstances are present.") In the context of a late application for employment of a professional, the Third Circuit explained that retroactive approval should be limited "to cases where prior approval would have been appropriate and the delay in seeking approval was due to hardship beyond the professional's control." *Id.* at 649-50. The bankruptcy court for the District of New Jersey has extended the Third Circuit's analysis in *Arkansas* to similar situations where "something of value has been provided to the estate for which compensation or reimbursement is not granted for statutory and policy reasons." *See, e.g., In re E-Tron Corp.*, 141 B.R. 49, 58 (Bankr. D.N.J. 1992) (refusing to grant *nunc pro tunc* approval of creditor's unauthorized loan to debtor).

16. The circumstances in the case at bar are not so extraordinary as to justify retroactive relief. The "hardship" suffered by WDS was ***entirely*** in its professional's control. WDS' bankruptcy counsel negotiated the Agreement including both the preference claim waiver and the provision stating that no court approval was necessary. In doing so, and based on its express area of expertise, WDS, by and through its counsel, knew or should have known that a preference claim waiver must be noticed to creditors and approved by the Court. There is no exception to this requirement absent a Court order.

17. Nor would it have imposed a "hardship" on WDS counsel to review the docket in this matter to confirm whether court approval was not necessary. At the time of the Agreement, finalized on May 3, 2023, the bankruptcy case was ten (10) days old. Only one hearing had taken

place and there were just 194 total docket entries in the Debtors' jointly administered bankruptcy case, of which just fifteen (15) were orders (the majority of which were interim).[5] Thus, it was completely within WDS' counsel's capacity, not to mention prudent, to review the docket and make its own assessment as to whether the negotiated waiver of a $2.9 million preference claim against it should be noticed to creditors and approved by the Court.

    iii. <u>Even if this Court Were Inclined to Grant *Nunc Pro Tunc* Approval of a Preference Claim Waiver, the Breach of Contract Claim Must Fail Because the Agreement Had Not Been Approved When the Plan Administrator Brought the Preference Claim</u>.

18.    Even if, hypothetically speaking, WDS could establish at this late juncture, approaching three (3) years after entering into the Agreement, that (i) it is entitled to pursue *nunc pro tunc* relief and (ii) this Court would have approved the Agreement had it been properly noticed and considered by the Court, the retroactive approval of a post-petition agreement cannot set the table for WDS' Breach of Contract Counterclaim.

19.    The Plan Administrator has been acting in reliance on the record before him, which is that no preference claim waiver was authorized. This Court has already denied WDS' motion for summary judgment on the question of whether the Agreement required notice and court approval. Were WDS to receive the benefit of retroactive review and, ultimately, after-the-fact approval of a preference claim waiver, the Plan Administrator cannot be held in breach of a contractual provision deemed unenforceable as a matter of law but for such extraordinary relief. Clearly, if this Court had approved the preference claim waiver, the Plan Administrator would not have pursued this preference action in the first instance. Were WDS to receive all of the benefit of retroactive relief, while at the same time penalizing the Plan Administrator for acting inconsistent with a revisionist record, would be completely inequitable.

---

[5] Bankr. Docket Nos. 75 – 78, 92 – 95, 97 – 99, 101 – 104.

20. Therefore, the Breach of Contract Counterclaim must be dismissed, whether or not WDS has plausibly alleged entitlement to *nunc pro tunc* approval of the Agreement.

B. **The Amendment Fails to Introduce Any Plausible Argument for Ignoring WDS' Bankruptcy Counsel's Intimate Involvement in Negotiating the Agreement.**

21. In order to plead fraudulent inducement a claimant must show that it reasonably relied on the statement at issue; in this case, the statement that the Agreement did not require court approval. However, "fraud cannot be predicated upon misrepresentation of law or misrepresentation as to matters of law." *Miller v. Yokohama Tire Corp.*, 358 F.3d 616 (9th Cir. 2004).

22. WDS introduces new allegations in an effort to bypass the general rule precluding fraud claims based on statements of law, by alleging that counsel for the Debtors possessed "superior knowledge" as compared to the knowledge of WDS and its counsel. While WDS is correct that the "superior knowledge" of one party over another can in limited circumstances trigger an exception to the general barring fraudulent inducement claims, the facts in this case come nowhere close to meeting this exception.

23. Put simply, WDS cannot establish reasonable reliance because it was represented by experienced bankruptcy counsel in connection with entering into the Agreement. WDS admits it was ably represented by counsel throughout negotiations including the relevant terms at issue here. There is no allegation that WDS' counsel was not qualified, incapacitated, or otherwise incapable of representing WDS in this capacity, nor can WDS plausibly plead such an allegation. The "superior knowledge" of Debtors' counsel versus that of WDS pales in comparison to the attorney-vs-elderly layperson and insurance adjuster-vs-dog-bite-victim examples in *Yokohama*.

24. The Bankruptcy Court for the District of New Jersey rejected an analogous argument in *E-Tron Corp.*, reasoning as follows:

10

> Even if the debtor's attorney had stated to the debtor or [the creditor] that court approval was unnecessary, which seems doubtful, [the creditor] would not have been justified in relying on such representations in light of Code sections 363(b) and 364 and the fact that court approval for loans had been sought and obtained twice before. In addition, [the creditor] would be obligated to consult its own attorney regarding the need for court approval and arrive at its own conclusion regarding the matter, and there is absolutely no basis whatsoever on the facts or the law for any conclusion that court approval was unnecessary.

*In re E-Tron Corp.*, 141 B.R. at 57-58. Similarly, there is no basis given for WDS' counsel to independently conclude that court approval was not necessary. "Any belief that approval is unnecessary or that it had been obtained must be reasonable and in good faith." *Id.* at 58 (citing *Matter of Alafia Land Development Corp.*, 40 B.R. 1 (Bankr. M.D. Fla. 1984). A representation by opposing counsel to the contrary is insufficient when an independent assessment by WDS would have revealed the necessity of court approval.

25. As recited above, the bankruptcy case was in its infantile stage such that there can be no reasonable justification for WDs' failure to review pleadings in the case or independently investigate whether the statutory requirement of notice and court approval was not in effect.

26. Because the Amendment fails to offer any plausible allegations demonstrating that the Debtors had "superior knowledge" as to whether a preference claim waiver required court approval, the Fraudulent Inducement Counterclaim must be dismissed.

C. **The Breach of Fiduciary Duty Counterclaim Fails for the Reasons Set Forth in Prior Briefing.**

27. WDS does not appear to have added any new allegations to support its Breach of Fiduciary Duty Counterclaim. The Plan Administrator requests that this counterclaim be dismissed for the reasons previously articulated in his briefing in support of dismissal.

D. **The Unjust Enrichment Counterclaim Fails As a Matter of Law.**

28. The Amendment introduces a new counterclaim seeking restitution for unjust enrichment (the "Unjust Enrichment Counterclaim"), which is pled in the alternative to the Breach

of Contract Counterclaim. Specifically, WDS argues that, to the extent it cannot recover for breach of contract, WDS can receive restitution equal to the amount of its preference claim liability plus the value of its pre-petition claim.

29. Under New Jersey law, a claim for unjust enrichment requires that "a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust." *Stewart v. Beam Global Spirits & Wine, Inc.*, 877 F. Supp. 2d 192, 196 (D.N.J. 2012). For an unjust enrichment claim to succeed, the plaintiff must establish that it "expected remuneration from the defendant, or if the true facts were known to plaintiff, he would have expected remuneration from defendant, at the time the benefit was conferred." *Id.* Courts have consistently explained that the expectation of a benefit conferred must be reasonable. *See, e.g., Dovale v. Marketsource, Inc.*, 2006 WL 2385099, at *9 (D.N.J. Aug. 17, 2006) ("it is well-settled in New Jersey law that a plaintiff must allege that he reasonably expected compensation to state a claim for unjust enrichment"); *Castro v. NYT Television*, 370 N.J. Super. 282, 300, 851 A.2d 88, 99 (App. Div. 2004) (dismissing claim for unjust enrichment due in part to failure to establish reasonable expectation of benefit).

30. The Unjust Enrichment Counterclaim must fail for the same reasons that the Breach of Contract and Fraudulent Inducement Counterclaims fail. In short, WDS cannot show a *reasonable* expectation of a preference claim waiver when such waiver required but did not receive court approval.

31. The *Restatement Third, Restitution and Unjust Enrichment* directly addresses the circumstance where a claimant faced with an unenforceable contract seeks restitution for nonperformance of such contract:

> There is no claim under this section if enforcement of the agreement is barred by the applicable statute of limitations, nor in any other case in which the allowance

12

> of restitution would defeat the policy of the law that makes the agreement unenforceable. Restitution is appropriate except to the extent that forfeiture is an intended or acceptable consequence of unenforceability.

*Restatement Third, Restitution and Unjust Enrichment* § 31(2) (2024). Here, the Bankruptcy Code unequivocally requires notice and court approval as a condition to waiving a chapter 5 claim. Just as the Breach of Contract Counterclaim fails because the Agreement is unenforceable, the Unjust Enrichment Counterclaim falters because the statutory requirement of notice and court approval cannot be circumvented. Put another way, why should WDS receive the benefit of a preference claim waiver through restitution, when such waiver was expressly barred under the Bankruptcy Code for lack of notice and court approval?

32. Nor can ignorance of the statutory requirement for court approval plausibly justify restitution when WDS was represented by bankruptcy counsel. *See Restatement Second, Contracts § 198* ("A party has a claim in restitution for performance that [the party] has rendered under or in return for a promise that is unenforceable on grounds of public policy if (a) [the party] was **excusably ignorant** of the facts or of legislation of a minor character, in the absence of which the promise would be enforceable or (b) [the party] was not equally in the wrong with the promisor." (Emphasis added). As with the Fraudulent Inducement Counterclaim, WDS' reliance on its own bankruptcy counsel refutes any allegation of ignorance or reasonable reliance regarding the need for court approval.

## **CONCLUSION**

33. For the reasons cited herein and in his briefing in support of the Motion to Dismiss, Movant respectfully submits that all Counterclaims against the Plan Administrator, including the new Unjust Enrichment Counterclaim, be dismissed with prejudice.

February 16, 2026  **ASK LLP**

By: /s/ *Brigette McGrath*
Brigette McGrath, Esq., NJ SBN 01000-2011
Nicholas C. Brown, Esq., VA SBN 99898
(admitted *pro hac vice*)
2600 Eagan Woods Drive, Suite 400
St. Paul, MN  55121
Telephone: (877) 746-4275
Fax: (651) 406-9676
Email: bmgrath@askllp.com
           nbrown@askllp.com

*-and-*

Edward E. Neiger, Esq.
ASK LLP
60 East 42nd Street, 46th Fl.
New York, New York  10165
Telephone: (212) 267-7342
Fax: (212) 918-3427

*Counsel for the Plan Administrator*