Maha M. Kabbash, Esq. (MK-0163)
TUCKER ELLIS LLP
1776 On the Green
67 E. Park Place, Ste. 500
Morristown, NJ 07960
Telephone: (862) 261-2532

Brian J. Jackiw (admitted *pro hac vice*)
Thomas R. Fawkes (admitted *pro hac vice*)
TUCKER ELLIS LLP
233 South Wacker Drive
Suite 6950
Chicago, Illinois 60606-9997
Telephone: (312) 624-6300

*Counsel to Defendant and Counter-Plaintiff World Distribution Services LLC*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **In re:** | **Case No. 23-13359 (VFP)** |
| **BED BATH & BEYOND, INC.,** *et al.* | **(Jointly Administered)** |
| *Debtors.* | **Chapter 11** |
| **Michael Goldberg, as Plan Administrator for 20230930-DK-Butterfly-1, Inc. (f/k/a Bed Bath & Beyond,** | |
| **Plaintiff and Counter-Defendant,** | **Adv. Case No. 24-01367** |
| **v.** | |
| **World Distribution Services LLC** | |
| **Defendant and Counter-Plaintiff.** | |

**DEFENDANT WORLD DISTRIBUTION SERVICES LLC'S REPLY TO PLAINTIFF'S
STATEMENT IN OPPOSITION TO FIRST AMENDED ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS TO COMPLAINT TO AVOID AND RECOVER
TRANSFERS PURSUANT TO 11 U.S.C.§§ 547, 548, 549, AND 550 AND TO DISALLOW
CLAIMS PURSUANT TO 11 U.S.C. § 502**

Defendant and Counter-Plaintiff World Distribution Services LLC ("<u>Defendant</u>" or "<u>WDS</u>"), by and through its undersigned counsel, files this Reply to Plaintiff and Counter-Defendant Michael Goldberg, as Plan Administrator for 20230930-DK-Butterfly-1, Inc. (f/k/a Bed Bath & Beyond Inc.)'s ("<u>Plaintiff's</u>" or "<u>Plan Administrator's</u>") Statement in Opposition (the "<u>Opposition</u>") to WDS's First Amended Answer, Affirmative Defenses, and Counterclaims (the "<u>First Amended Answer</u>") and states as follows:

## **REPLY**

The Plan Administrator, once again, seeks to dismiss all of WDS's Counterclaims, and opposes the First Amended Answer, relying on a single decision to support its contention that the Agreement (as previously defined) could *only* be enforceable upon approval of this Court, despite WDS citing to two orders, entered by this Court, which allowed the Debtors to act without Court authority on matters which typically require notice and hearings, and which the Debtors reasonably relied upon in representing to WDS that the Agreement did not require Court approval.

Moreover, the Plan Administrator continues to cite inapplicable case law for the faulty proposition that parties represented by counsel could not rely on statements made by the opposing party.  There are exceptions to that proposition, those exceptions apply here, and it is simply premature for adjudication of such issues at the pleadings stage.

In addition, in its Opposition, the Plan Administrator makes nothing more than conclusory statements related to WDS's breach of fiduciary duty and unjust enrichment claims that are wholly insufficient to justify dismissal of those counts.

For the reasons set forth below, WDS submits that the Counterclaims easily satisfy the pleading requirements applicable in this District, and further, that the Counterclaims, as amended by the First Amended Answer, address each of this Court's concerns raised at the January 13, 2026

hearing in this matter, and WDS should be permitted to proceed with their prosecution.

A.     **WDS Pleads a Viable Counterclaim for Breach of Contract**

In renewing its request to have WDS's breach of contract Counterclaims dismissed, Plan Administrator again relies on *In re Roth American*, 975 F.2d 949 (3rd Cir. 1992) for the proposition that an unenforceable contract cannot be the subject of a breach of contract claim, consistent with its assertion that because the Agreement was not specifically and independently approved by the Court, it cannot be enforced against the Plan Administrator.

The Plan Administrator's myopic argument, however, misses the forest for the trees. While WDS does not dispute that certain non-ordinary transactions in a bankruptcy case require Court approval, it has repeatedly argued that *this* Agreement can be enforced notwithstanding its lack of specific Court approval, and the First Amended Answer provides sufficient support for that argument for pleading purposes, noting that this Court, in these cases, has expressly authorized the Debtors to take certain actions and enter into certain agreements without Court approval. Specifically, the DIP Order and Critical Lien Order both provided the Debtor authority to enter into the Agreement. WDS alleges that it properly relied on the Debtors' representations that Court approval was unnecessary to effectuate the Agreement.

While the Plan Administrator retorts that this Court has already determined that the Debtor did not have that authority, this is wholly untrue – and the Plan Administrator knows it. Rather, the Court simply denied summary judgment in WDS's favor on the Plan Administrator's section 547 claim, based on a *rebuttable* premise that the Agreement required Court approval. The Court *did not* conclusively determine that the Agreement was unenforceable, and in fact, expressly allowed WDS to raise a Counterclaim for breach of contract and thereafter granted leave for WDS to further substantiate the claim by way of the First Amended Answer. WDS has sufficiently pled

this claim.

**B.      This Court May Rule that the Agreement Would Have Been Approved and Is Therefore Enforceable.**

The Plan Administrator spends significant time arguing that "nunc pro tunc" relief should not be granted (but never says it cannot).  Indeed, he suggests that WDS is seeking retroactive relief on the Agreement.  He does so because he knows that any other result leads to an inequitable resolution.  WDS submits that *nunc pro tunc* relief is not what WDS is seeking (rather, WDS contends that the Agreement has *always* been enforceable), but will proceed with the analysis anyway due to the Plan Administrator's incorrect presumption of the law.

To be sure, this Court has already held that WDS may argue that the Court would have approved the Agreement had it been presented. Dkt. No. 28, pg. 9, lines 3-5.

This is not a recreation of facts or fictional occurrence.  The Court is the ultimate arbiter and can see the very real benefits this deal brought to the estates and creditors – including the DIP lenders.  As approval of a non-ordinary course transaction under section 363 requires the movant to demonstrate that the transaction will benefit the bankruptcy estate and creditors, demonstrating – at this time – the specific benefits that the estates obtained from the Agreement will simply validate the Debtors' decision to enter into it and should convince the Court that it would have approved the Agreement had it been presented by Motion.

The effect of the Agreement's clauses, including the Ordinary Course Admission and the statement that Court approval was not needed (the "Court Approval Admission") result in no preference liability.  In consideration for the Ordinary Course Admission, Agreement provided $20 million worth of goods for the benefit of the estates, along with a claims waiver having substantial value.  This alone should convince any party in interest, as well as the Court, that the Agreement and its admissions were in the best interest of the estate and would have been approved.

The Plan Administrator notes that *nunc pro tunc* relief of estate property should be limited to "cases where extraordinary circumstances are present." WDS contends that none of this is "*nunc pro tunc*" because the Agreement is valid. However, WDS notes that this is indeed a case of extraordinary circumstances where Debtors' counsel, Kirkland & Ellis either made a mistake or intentionally misrepresented the Debtors' authority to WDS's detriment.

The Plan Administrator seeks to blame WDS and its professionals for this hardship, yet ignores the fact that Kirkland & Ellis negotiated the Agreement with the Debtors' general counsel and knew the Debtors' documents and authorities. Based on its extensive background with the bankruptcy case and the docket – which was indisputably superior to that of WDS, whose interest in the bankruptcy was far more discrete – the Debtors represented that Court approval was unnecessary. At the pleading stage, WDS's allegations to this effect are more than sufficient to pass muster. The Plan Administrator will have ample opportunity in discovery and at trial to attempt to rebut WDS's allegations.

The Plan Administrator victim-blames WDS by arguing that it should have reviewed the thousands of pages of records to counter the Debtors' purported misrepresentations. Again, this is an argument more appropriately presented at trial. WDS has plausibly alleged that it relied upon the Debtors' representations and that such reliance was reasonable.

## C.    The Timing of The Counterclaims Has No Bearing on The Relief Requested

The Plan Administrator argues that it would be inequitable for the Court to consider approving the Agreement at this late date because he has already filed a complaint. This is a red herring argument for many reasons, but the biggest reason is that WDS informed the Plan Administrator of the Agreement well before he filed the Complaint. He was well aware of the Agreement and the Ordinary Course and Court Approval admissions prior to suit. WDS has

advocated for the enforcement of the Agreement since the very beginning of the litigation and has repeatedly done so throughout.

**D.      Counsel's Involvement in the Agreement Does Not Bar the Fraudulent Inducement Counterclaim**

The Plan Administrator argues that WDS cannot claim fraudulent inducement because it had counsel.  The Plan Administrator doubles down on his misinterpreted and misstated case law in furtherance of this theory.  This issue has already been extensively briefed in connection with the Plan Administrator's Motion to Dismiss WDS's Counterclaims, but WDS makes a few additional remarks in light of the Plan Administrator's renewed argument.

First, WDS reiterates that one of the key exceptions to the rule that a fraudulent inducement claim cannot be sustained where counsel represented the defrauded party is that the "defrauding" party has superior knowledge.  The Plan Administrator tries to navigate around this exception by asserting that WDS could have reviewed the docket itself and come to its own conclusions.  Again, such an assertion wholly misapprehends the complexity of a multi-billion-dollar, multi-debtor chapter 11 case, in which the public docket comes nowhere near telling the entire story.  It is absurd for the Plan Administrator to suggest that WDS – who was under extraordinary pressure from the Debtors to release inventory from its warehouse – to devote substantial time and substantial cost to reviewing thousands of pages of docket entries when the Debtors' sophisticated outside counsel, who were the very architects of the bankruptcy cases and who drafted every pleading and document filed by the Debtors, represented that Court approval of the Agreement was not required. But even if WDS's reliance argument does not hold water, the pleadings stage of a case is not the appropriate forum for that determination to be made.

The Plan Administrator then cites to *In re E-Tron Corp.* 141 B.R. 49, 57-58 (Bankr. D. N.J. 1992), which he claims stands for the proposition that *nunc pro tunc* relief was not proper

because counsel could not rely on the debtor's attorney.

But there are significant differences between this quote from *E-Tron* and the present case. Specifically, the lender in *E-Tron* had sought court approval on two other transactions and did not on the one in question. The big takeaway is that the lender could not have believed it did not need approval because it knew it needed approval (and obtained it) on its other, similar, transactions.

In fact, *E-Tron* supports WDS's position, in that it holds that "[a]ny belief that approval is unnecessary or that it had been obtained must be reasonable and in good faith." *E-Tron*, 141 B.R. at 58; *see also Matter of Alafia Land Development Corp.* 40 B.R. 1, 4 (Bankr. M.D. Fla. 1984) (*nunc pro tunc* approval is within the discretion of the court).

Here, WDS has pled that it did in fact rely upon the Debtors' representations, and that its reliance was reasoned and in good faith. Again – WDS continues to be guilty of trying to litigate the case on the merits at the pleadings stage, which is completely inappropriate. This Court can and should conclude that WDS has done enough to make a plausible claim for fraudulent inducement, and the Plan Administrator will have every opportunity to conduct discovery on WDS's reliance argument.

Moreover, the *E-Tron* court held:

> We think that the judge should not retroactively validate the loan unless he is confident that he would have authorized it if timely application had been made, and unless, in addition, he is reasonably persuaded that the creditors have not been harmed by continuation of the business made possible by the loan. He should also take into account, as bearing on the good faith of the debtor and lender, whether or not they honestly believed that they had authority to enter into the transaction. Of necessity, each case must stand on its own facts and these criteria cannot be mechanically applied; they should, however, materially facilitate the preparation of an intelligent record. We should emphasize that this equitable power must be cautiously exercised, and that only a foolhardy lender will attempt to make it serve as a substitute for proper authorization.

*E-Tron,* 141 B.R. at 497 (*citing In re American Cooler Co.*, 125 F.2d 496 (2d. Cir. 1942)). This validates the Court's suggestion that it could enforce the Agreement – even absent prior approval

– if it subsequently determines that the estate benefitted from the transaction and that it would have approved the Agreement if it had been contemporaneously presented for approval.

This Court has allowed for the review of nunc pro tunc approval and WDS has plausibly pled that its reliance on the Debtors' representations was reasonable and in good faith and the Agreement was in the best interest of the estate and all creditors. Dismissal of the fraudulent inducement Counterclaim is therefore unwarranted.

**E.     WDS Contends that It Need Not Address the Fiduciary Duty Claim because Nothing has Changed.**

Plan Administrator admits that no amendments were made to this part of the First Amended Complaint. Accordingly, WDS reasserts its arguments in its opposition to the Motion to Dismiss.

**F.     Unjust Enrichment Is a Valid Counterclaim and Restitution Is the Proper Remedy**

In seeking dismissal of WDS's unjust enrichment Counterclaim, the Plan Administrator again puts his eggs in the reliance on counsel basket, incorrectly suggesting – and indeed convoluting the argument, that WDS cannot prevail because it had lawyers and did not seek approval of the Agreement through notice and hearing.

This is once again victim blaming. The Plan Administrator states "why should WDS receive the benefit of a preference claim waiver through restitution, when such waiver was expressly barred under the Bankruptcy Code for lack of notice and court approval?" Leaving aside the fact that such waivers are not expressly barred – in fact, the DIP Order expressly permitted for the disposition of collateral having a value of less than $250,000 without DIP lender or Court approval – the Plan Administrator's argument fails for the very same reason as its prior arguments concerning reliance.

As alleged in the First Amended Answer, the Debtors received substantial benefits under the Agreement and WDS unquestionably relinquished valuable assets – namely, its substantial pre-

petition claim that would have been paid 100 cents on the dollar – in exchange for the Ordinary Course Admission and other benefits provided thereunder. All that WDS is asking for in prosecuting its Counterclaims is for it to receive the full benefits it negotiated. If the Court will not enforce the Agreement because it deems the Debtors' representations concerning Court approval to have been erroneous, and does not otherwise enforce the Agreement due to it not having been approved, WDS should have the right to equitable relief.

Here, the Plan Administrator's continued attempts to dodge the Agreement underscores the inequities present in this case and accordingly, the need for equitable relief in WDS's favor if legal remedies are unavailable. It is simply not equitable for the estates to receive all of the benefits of the Agreement but for WDS to be deprived of the same outcome because the Plan Administrator has engaged in revisionist history. WDS's unjust enrichment Counterclaim protects against such an outcome.

The whole premise the Plan Administrator sets forth is that WDS should get nothing despite the Debtors and its counsel lying or unknowingly misrepresenting. Under no circumstances should the Plan Administrator be allowed to profit off the misdeeds of his predecessors. WDS has sufficiently pled a Counterclaim for unjust enrichment in the alternative to its Counterclaims at law and it should survive dismissal.

WHEREFORE, the Defendant requests entry of a judgment:

A. Denying the Plan Administrator's Motion to Dismiss;

B. Overruling the Plan Administrator's Opposition; and

C. Providing for such other and further relief that this Court deems just and proper.

Dated:  February 20, 2026

Respectfully submitted,

TUCKER ELLIS LLP

*s/ Maha M. Kabbash*
Maha M. Kabbash, Esq.
67 E. Park Place, Suite 500
Morristown, NJ 07960
Direct: 862-261-2532
Fax: 862-261-2551
Maha.kabbash@tuckerellis.com

Brian J. Jackiw, Esq. (admitted *pro hac vice*, IL
Atty No. 6296807)
233 South Wacker Drive, Suite 6950
Chicago, IL  60606
Direct: 312-256-9426
Fax: 312-624-6309
brian.jackiw@tuckerellis.com

*Attorneys for Defendant and Counter-Plaintiff*
*World Distribution Services LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on February 20, 2026, a true and correct copy of DEFENDANT
WORLD DISTRIBUTION SERVICES LLC'S REPLY TO PLAINTIFF'S STATEMENT IN
OPPOSITION TO FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND
COUNTERCLAIMS TO COMPLAINT TO AVOID AND RECOVER TRANSFERS
PURSUANT TO 11 U.S.C.§§ 547, 548, 549, AND 550 AND TO DISALLOW CLAIMS
PURSUANT TO 11 U.S.C. § 502 was electronically filed and was served via electronic mail upon
counsel of record in this proceeding.


Dated: February 20, 2026                    *s/ Maha M. Kabbash*_____
                                            Maha M. Kabbash, Esq.

                                            *Attorney for Defendant and Counter-Plaintiff*
                                            *World Distribution Services LLC*