| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY** | |
| **Caption in Compliance with D.N.J. LBR 9004-1(b)**<br>Marianna Udem<br>Brigette McGrath<br>Nicholas C. Brown<br>ASK LLP<br>60 East 42nd Street, 46th Floor<br>New York, NY 10165<br>Telephone: (212) 267-7342<br>Facsimile: (212) 918-3427<br>mudem@askllp.com<br>bmcgrath@askllp.com<br>nbrown@askllp.com<br><br>*Special Counsel to the Plan Administrator* | |
| In re:<br><br>BED BATH & BEYOND, INC., *et al.*,[1]<br><br>                              Debtor. | Chapter 11<br><br>Case No. 23-13359 (VFP)<br><br>(Jointly Administered) |
| Michael Goldberg, as Plan Administrator for 20230930-DK-Butterfly-1, Inc. (f/k/a/ Bed Bath & Beyond Inc.),[2]<br>                              Plaintiff,<br><br>v.<br><br>World Distribution Services LLC,<br>                              Defendant. | Adv. No. 24-01367 (VFP)<br><br><br>**Re: Adv. Docket No. 39** |

## THE PLAN ADMINISTRATOR'S ANSWER TO DEFENDANT'S COUNTERCLAIMS

---

[1]    The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby. The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 650 Liberty Avenue, Union, New Jersey 07083.

[2]    Pursuant to the *Certificate of Amendment of the Certificate of Incorporation of Bed Bath & Beyond Inc.*, which was filed with the State of New York Department of State on September 21, 2023, the name of the entity formerly known as "Bed Bath & Beyond Inc." was changed to *20230930-DK-Butterfly, Inc.* [Filing ID No. 230921001833 DOS ID 315602].

1

Michael Goldberg, as Plan Administrator (the "Plan Administrator") for 20230930-DK-Butterfly-1, Inc. (f/k/a/ Bed Bath & Beyond Inc.) and its affiliated debtors (each, a "Debtor" and collectively, the "Wind-Down Debtors" or "Debtors") in the above-captioned case, hereby files this Answer to the Counterclaims asserted by defendant and counterclaimant World Distribution Services ("WDS") and states and alleges as follows:

1. Paragraph 1 of the Counterclaims does not require a response. To the extent a response is required, Paragraph 1 is denied.

## FACTUAL BACKGROUND

2. Paragraph 2 is admitted.

3. It is admitted that WDS provided logistics and warehousing services for the Debtors. The Plan Administrator lacks knowledge or information sufficient to form a belief about the truth of the remainder of Paragraph 3 and therefore denies the same.

4. It is admitted that on April 26, 2023, the Debtors informed WDS it was a critical lien claimant entitled to payment in accordance with the Critical Lien Motion and requested that WDS "resume operations immediately." It is denied that the Debtors represented to WDS that they would be paying all amounts owed to WDS pre-Petition Date. Except to the extent expressly admitted herein, the remainder of Paragraph 4 is denied.

5. It is admitted that the Debtors paid WDS $301,688.96 shortly after the Petition Date which sum was applied toward pre-petition invoice obligations. Except as expressly admitted herein, the allegations in Paragraph 5 are denied.

6. It is admitted that the Debtors and WDS engaged in negotiations for post-petition services. The Plan Administrator lacks knowledge or information sufficient to form a belief about

the number of telephone conferences, email communications, and participants comprising such negotiations.  Except as expressly admitted herein, the allegations in Paragraph 6 are denied.

7.      It is admitted that WDS sent an email to the Debtors on May 3, 2023 which contained the language stated in Paragraph 7.  Except as expressly admitted herein, the allegations in Paragraph 7 are denied.

8.      It is admitted that the language "Debtors agree and acknowledge that all pre-petition payments made by Debtors to WDS were made in payment of a debt incurred by the Debtors in the ordinary course of business of the Debtors and WDS and such payment was made in the ordinary course of business of the debtor and WDS" was included in WDS' May 3, 2023 email to the Debtors.  Except as expressly admitted herein, the allegations in Paragraph 8 are denied.

9.      Paragraph 9 is denied.

10.      It is admitted that one provision in WDS' May 3, 2023 email to the Debtors provided that "WDS agrees to waive its prepetition claim."  Except as expressly admitted herein, the allegations in Paragraph 10 are denied.

11.      It is admitted that Mr. Kastin was general counsel of the Debtors and sent an email dated May 4, 2023 to counsel for WDS in which he wrote "Confirmed."  It is further admitted that Olivia Acuna of Kirkland & Ellis was counsel for the Debtors and sent an email dated May 3, 2023 to counsel for WDS in which she wrote "We are signed off on the below language." Except as expressly admitted herein, the allegations in Paragraph 11 are denied.

12.      Paragraph 12 is denied.

13.      It is admitted that the Debtors made a post-petition payment to WDS in the sum of approximately $3,000,000.00.  The Plan Administrator lacks knowledge or information sufficient

to form a belief about the truth of the remainder of Paragraph 12.  To the extent a further response is required, except as expressly admitted herein, the allegations in Paragraph 13 are denied.

14.     The Plan Administrator lacks knowledge or information sufficient to form a belief about the truth of the remainder of Paragraph 14.  To the extent a further response is required, except as expressly admitted herein, the allegations in Paragraph 14 are denied.

15.     Paragraph 15 is denied.

16.     Paragraph 16 is denied.

17.     Paragraph 17 is admitted.

18.     Paragraph 18 is admitted.

19.     It is admitted that the Plan Administrator is designated as the exclusive representative of the Wind-Down Debtors under the Plan Administrator Agreement.  Except as expressly admitted herein, the allegations in Paragraph 19 are denied.

20.     It is admitted that counsel to the Plan Administrator sent WDS a letter dated November 15, 2023 demanding turnover of the Transfers less allowed new value.  Except as expressly admitted herein, the allegations in Paragraph 20 are denied.

21.     It is admitted that counsel for WDS sent an email to counsel for the Plan Administrator on November 28, 2023.  It is further admitted that such email makes brief, general references to liens on goods, a post-petition agreement and a statement regarding the ordinary course of business.  It is further admitted that WDS counsel requested that the Plan Administrator cease pursuit of his claims.  Except as expressly admitted herein, the allegations in Paragraph 21 are denied.

22.     It is admitted that counsel for the Plan Administrator sent correspondence to counsel for WDS on May 13, 2024, in which counsel for the Plan Administrator expressed his

4

position that there was no enforceable preference claim waiver due in part to the lack of any written authorization from the DIP lender as required under the DIP Order or bankruptcy court approval, and that he intended to commence filing a complaint to pursue avoidance and recovery of the Transfers in the event the parties were not able to resolve the matter.  Except as expressly admitted herein, the allegations contained in Paragraph 22 are denied.

23.     It is admitted that the Plan Administrator, by and through counsel, filed a complaint against WDS on May 17, 2024, seeking avoidance and recovery of approximately $3,213,155.75 in pre-petition and post-petition transfers.  Except as expressly admitted herein, the allegations in Paragraph 23 are denied.

### COUNTERCLAIM I
### Breach of Contract

24.     The Plan Administrator incorporates all preceding paragraphs as if fully re-alleged herein.

25.     Paragraph 25 is denied as written.  It is admitted that counsel for WDS sent the May 3, 2023 email to the Debtors, that counsel for the Debtors responded by email dated May 3, 2023, and that general counsel to the Debtors responded on May 4, 2023.  Except as expressly admitted herein, the allegations in Paragraph 25 are denied.

26.     Paragraph 26 is denied.

27.     Paragraph 27 is denied.

28.     Paragraph 28 is denied.

29.     It is admitted that the WDS Email dated May 3, 2023 included a provision stating that the Debtors did not need court approval to enter into the "Agreement".   Except as expressly admitted herein, the allegations in Paragraph 29 are denied.

30.     Paragraph 30 is denied.

31.     Paragraph 31 is denied.

32.     Paragraph 32 is denied.

33.     Paragraph 33 is denied with respect to the "Agreement".  The Plan Administrator further responds that enforceability of the "Agreement" required DIP lender consent and bankruptcy court approval, neither of which occurred.

34.     Paragraph 34 is denied.

35.     Paragraph 35 is denied.

36.     Paragraph 36 is denied.

A-F:    Regarding WDS' prayer for relief as to its counterclaim for breach of contract, the Plan Administrator denies that WDS is entitled to the relief requested.

### COUNTERCLAIM II
### Fraudulent Inducement

37.     The Plan Administrator incorporates all preceding paragraphs as if fully re-alleged herein.

38.     The Plan Administrator admits that, pursuant to the Plan Administrator Agreement, he is the sole representative of the Wind-Down Debtors.  Except as expressly admitted herein, the allegations in Paragraph 38 are denied.

39.     It is admitted that counsel for the Debtors affirmatively responded to counsel for WDS' May 3, 2023 email which Defendant characterizes as the "Agreement", and that said email which was written and communicated by WDS, contained the provision which Defendant characterizes as the "Ordinary Course Admission" and a provision stating court approval was not necessary.  Except as expressly admitted herein, the allegations in Paragraph 39 are denied.

40.     Paragraph 40 is denied.

6

41.     It is admitted that the Plan Administrator asserts that any alleged preference claim waiver within the "Agreement" is not enforceable for, *inter alia*, failure to obtain written consent of the DIP lender or court approval.  Except as expressly admitted herein, the allegations in Paragraph 41 are denied.

42.     Paragraph 42 is denied.

43.     Paragraph 43 is denied.

44.     Paragraph 44 is denied.

45.     Paragraph 45 is denied.

A – F:  Regarding WDS' prayer for relief as to its counterclaim for fraudulent inducement, the Plan Administrator denies that WDS is entitled to the relief requested.

**COUNTERCLAIM III**
**Breach of Fiduciary Duty**

46 – 54: No answer is required as this Counterclaim was dismissed pursuant to the Order entered on March 9, 2026 [Adv. Pro. Docket No. 43]]

**COUNTERCLAIM IV**
**Unjust Enrichment**

55.     The Plan Administrator incorporates all preceding paragraphs as if fully re-alleged herein.

56.     An admission or denial is not required as to Paragraph 56.  To the extent a further response is required, the allegations in Paragraph 56 are denied.

57.     Paragraph 57 is denied.

58.     Paragraph 58 is denied.

59.    The Plan Administrator lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 59.  To the extent a further response is required, the allegations in Paragraph 59 are denied.

60.    Paragraph 60 is denied.

61.    Paragraph 61 is denied.

A-B:  Regarding WDS' prayer for relief as to its counterclaim for unjust enrichment, the Plan Administrator denies that WDS is entitled to the relief requested.

## AFFIRMATIVE DEFENSES

The Plan Administrator hereby alleges the following affirmative defenses as a bar to any recovery by WDS on its Counterclaims:

1.    WDS has failed to state a claim upon which relief can be granted.

2.    WDS assumed the risk that the "Ordinary Course Acknowledgment" and "Consent Admission" did not give rise to a preference claim waiver and/or was unenforceable, so that WDS is barred from recovering on its Counterclaims.

3.    WDS did not reasonably or justifiably rely on the "Ordinary Course Acknowledgement" and "Consent Admission" where WDS was represented by bankruptcy counsel, WDS (through its counsel) drafted the "Agreement" including the Ordinary Course Acknowledgment and Consent Admission, and WDS knew or should have known such provisions were (i) false statements and/or (ii) unenforceable, so that WDS is barred from recovering on its Counterclaims.

4.    The Debtors lacked an intent to defraud where WDS drafted the provisions at issue.

8

5. The Plan Administrator cannot be liable for, and is justified in pursuing, claims to avoid the Transfers under Third Circuit precedent (which renders unenforceable a post-petition agreement that required but did not receive court approval) and the Bankruptcy Code (requiring court approval to use property outside the ordinary course).

6. The "Agreement" is void as a matter of public policy and WDS is barred from recovering on its Counterclaims.

7. The "Ordinary Course Acknowledgment", drafted by WDS, had an illegal purpose and is unenforceable.

8. WDS lacked a reasonable expectation of benefit from the "Ordinary Course Acknowledgement" and "Consent Admission".

9. WDS received payment for the benefits conferred to the Debtors.

10. The Debtors and WDS lacked a meeting of the minds regarding the meaning and effect of the "Ordinary Course Acknowledgment".

11. The "Ordinary Course Acknowledgment" is ambiguous and its interpretation must be construed against WDS as the drafter.

12. WDS is estopped from asserting the Debtors agreed to a preference claim waiver because the Debtors informed WDS they could not agree to a preference claim waiver.

13. WDS is barred from recovering damages related to the "Ordinary Course Acknowledgment" under the doctrines of unclean hands and/or duress.  WDS refused to release inventory to the Debtors until the Debtors agreed to terms acceptable to WDS.  WDS was informed the Debtors could not agree to a preference claim waiver, but has taken the position that the "Ordinary Course Acknowledgement" should be treated as a preference claim waiver.

9

14.     WDS is not entitled to affirmative relief under 11 U.S.C. § 502(d) and/or because

any such relief is subject to setoff.

WHEREFORE, the Plan Administrator respectfully requests judgment in his favor as to all

Counterclaims, and for such other relief as this Court deems just and proper.

Dated: April 2, 2026          **ASK LLP**

By: /s/ *Brigette McGrath*
Brigette McGrath, Esq., NJ SBN 01000-2011
Nicholas C. Brown, Esq., VA SBN 99898, NC SBN 38054
(admitted *pro hac vice*)
2600 Eagan Woods Drive, Suite 400
St. Paul, MN  55121
Telephone: (877) 746-4275
Fax: (651) 406-9676
Email: bmgrath@askllp.com
         nbrown@askllp.com

*-and-*

Edward E. Neiger, Esq.
60 East 42nd Street, 46th Fl.
New York, New York  10165
Telephone: (212) 267-7342
Fax: (212) 918-3427

*Counsel for the Plan Administrator*

10